[Civ. No. 83. Fourth Appellate District.—November 24, 1930.]

SOUTHERN PACIFIC LAND COMPANY (a Corporation), Appellant, v. E. E. KIGGINS et al., Respondents.

Frank Thunen for Appellant.

W. E. Byrne and Charles G. Crouch for Respondents.

MARKS, Acting P. J.—Appellant was and is the owner of approximately 480 acres of land in San Bernardino County. On September 29, 1925, it entered into an executory contract for the sale of this land to Harold Kiggins, the son of E. E. Kiggins, one of the respondents. Two hundred and seventy dollars was paid in cash on account of the purchase price of the property, the balance of which was to be paid in deferred payments, the first falling due on September 29, 1926. The vendee was evidently let into possession of the property. The contract contained the following provision:

"Fourth. That until after all payments have been made as hereinbefore provided, Vendee will not, nor will he permit others to remove or destroy, in whole or in part, any improvements placed upon the said land, nor cut any wood or trees thereon, nor do any mining thereon, nor commit any strip or waste on the said premises; and that all trees and minerals upon said land shall, until after all payments have been made, be and remain the property of Vendor."

On October 10, 1925, respondents executed the following instrument:

"Office, Main 3073 Residence Cor. 366.
 "Henry G. Fenton Grading and General Contractor
 "Office and Yards, Dewey and Main Streets
 "San Diego, California,
 "October 10, 1925.
"Mr. E. E. Kiggins, Oro Grande, California

"Dear Sir: Confirming verbal conversation with you this morning concerning the matter of obtaining material from

land owned by you for the manufacture of road surfacing material for use on my contract with the State Highway Commission for the construction of road from Victorville to Hicks, California.

"It is my understanding that you grant to me the right to obtain such material as may be required for the work and for this right I am to pay you or your assigns the sum of one thousand dollars in instalments as follows: One third the amount with this letter, one third on or before December 10, 1925, and the remaining one third on or before January 10, 1926.

"The engineers for the State Highway Commission estimate that this contract will require 41,000 tons of road surfacing material, if, however, more than this amount of road surfacing material is required for this contract or for other work which we may secure, it is my understanding that I may obtain such additional material upon payment to you of two and one-half cents per ton for all tonnage over and above 41,000 tons.

"If the foregoing is in accordance with your understanding of our verbal agreement and is acceptable to you will you so indicate by signing below and return one copy for my record.

"H. G. FENTON.

"Accepted E. E. KIGGINS."

Harold Kiggins made no further payments on the purchase price of the property and forfeited his right to purchase it. In April, 1927, and after the forfeiture, appellant discovered that Henry G. Fenton had removed about 41,000 tons of gravel from the property. Appellant thereupon filed suit against respondents for $1,000, the value of the gravel removed.

The complaint alleged: Ownership in appellant, but not the possession of forty acres of the property from which the gravel had been removed; the value of the gravel and damages in the sum of $1,000 resulting from its removal; and that demand on respondents for $1,000 had been made and their refusal to pay the same.

Respondents filed separate answers. Kiggins denied the removal of any gravel and any damage to appellant. Fenton admitted the removal of the gravel, but denied that its value and the damages resulting from its removal were in

excess of $50. He further denied that his entry upon the property and the removal of the gravel was without right and without the permission of appellant.

The trial court found that the contract between appellant and Harold Kiggins had been executed and that it had not been recorded; that Harold Kiggins went into possession of the property and was in possession thereof during the time the gravel was removed; that E. E. Kiggins acted as agent for Harold Kiggins · and sold to Fenton the gravel in question which was of the value of $1,000; that it was removed with the knowledge and consent of Harold Kiggins; that in purchasing and removing the gravel Fenton acted in good faith and paid the $1,000 to Harold Kiggins. Upon these findings judgment was entered for respondents.

It was the theory of respondents before the trial, and which they urge here, that the action is for damages for trespass; that trespass is a wrong against the possessor of property; that an action therefor cannot be maintained by one out of possession; that at all times material to the action, Harold Kiggins was in possession of the property in question; that E. E. Kiggins acted as agent for Harold Kiggins throughout the transaction; that Fenton was the licensee and permittee of Harold Kiggins in entering upon the property and removing the gravel and did so under color of right; that, therefore, the legal owner of the property out of possession could not recover damages resulting from a trespass committed by one under authority from another in possession.

Section 307 of the Code of Civil Procedure provides that there shall be but one form of civil action in California. In the case of *Rogers* v. *Duhart*, 97 Cal. 500 [32 Pac. 570], it was held as follows:

"The briefs are devoted chiefly to a discussion of the question whether an action trespass *quare clausum fregit* can be maintained by one who was not in the actual possession of the land at the time the acts complained of were performed. The respondent refers to cases showing that actual possession is not in all cases essential, and the appellant insists that the exceptions are confined to cases in which the plaintiffs were the owners—where the title draws to it the possession for the purpose of redressing injuries to the estate.

"It would be a useless thing to attempt to reconcile the cases on this subject. Decisions adhering to the common-law rules of pleading are seldom of any value in determining the sufficiency of a pleading under the code, and sometimes lead to serious departures from its letter and spirit. With us, mere forms of action are set aside. Every action is now, in effect, a special action on the case. (*Jones* v. *Steamer Cortes,* 17 Cal. 487 [79 Am. Dec. 142] ; *Goulet* v. *Asseler,* 22 N. Y. 225; *Matthews* v. *McPherson,* 65 N. C. 189; *Brown* v. *Bridges,* 31 Iowa, 145.) And the rigid formalism and subtle distinctions found in the rules governing the common-law forms of action are as inapplicable and inane under the modern plan of procedure as the highly dramatic speech, senseless repetitions, and symbolic gestures of the formulae prescribed for the five forms of civil actions by the decemvirs of ancient Rome.

"Does the complaint state in ordinary and concise language facts sufficient to constitute a cause of action? That is the question, and not whether it is sufficient to show trespass *quare clausum,* trespass *vi et armis,* or any other technical form of action, *ex delicto or ex contractu.*

"The common-law rule is, that if plaintiff declare in trespass *quare clausum,* where the action should be *case,* he will be nonsuited at the trial; but under our system, if the *facts* alleged and proved are such as would have entitled the plaintiff to relief under any of the recognized forms of action at common-law, they are sufficient as the basis of relief, whatever it may be."

If we assume that the theory of respondents is correct, except that a plaintiff out of possession cannot recover for damages to the freehold, yet upon such theory the appellant has a good cause of action and the right to recover. Appellant was the owner of an interest in the freehold. Harold Kiggins possessed an equitable interest in the property through his contract of purchase. Respondents entered upon the land under authority from Harold Kiggins and removed part of the freehold. Waste has been defined as follows: "As defined by Lord Coke, it 'is a spoil or destruction in houses, gardens, trees or other corporeal hereditaments to the disinherison of him that hath the remainder in fee simple or fee tail'. It has also been defined as an unlawful act or omission of duty on the part of a tenant which re-

sults in permanent injury to the inheritance. The word is not an arbitrary term to be applied inflexibly without regard to the quantity or quality of the estate, the nature and species of property, or the relation to it of the person charged to have committed the wrong. In order to constitute technical waste privity of title must exist between parties, and the wrongdoer must be rightfully in possession.'' (25 Cal. Jur. 975.)

It has been held that a vendee in possession of real property under an executory contract of sale cannot remove fixtures from the land thereby committing waste (*Conde* v. *Sweeney,* 14 Cal. App. 20 [110 Pac. 973]), nor can he remove fixtures placed thereon by himself without an agreement giving him the right so to do. (*Conde* v. *Sweeney,* 16 Cal. App. 157 [116 Pac. 319].) If such a vendee cannot remove fixtures, certainly those entering upon the property under him and by his authority cannot remove large quantities of the soil itself.

Judgment reversed.

Barnard, J., and Warmer, J., *pro tem.,* concurred.