[Civ. No. 4955. Third Appellate District.—November 8, 1933.]

LOUIE BACIGALUPI et al., Respondents, v. WESTERN MACHINERY COMPANY et al., Appellants.

C. Huntington Jacobs and Arthur P. Shapro for Appellants.

Rowan Hardin for Respondents.

THOMPSON, J.—This is an appeal from a judgment in favor of the plaintiffs Louie, John and Ernest Bacigalupi, for the sum of $750 as damages for the dismantling, removal and conversion of certain mining machinery, fixtures and improvements. The judgment was rendered against the defendants Western Machinery Company, H. & H. Mining Corporation, Sam Hamilton and H. Hollanby. No judgment was entered against the defendant Jno. L. Witney Company. From the judgment which was rendered against them, the defendants Western Machinery Company and Sam Hamilton, only, have appealed.

The appellants contend that the machinery in question was removed from the mine by the lessee thereof pursuant to the terms of the lease which authorized its removal at the termination thereof, and that the respondents therefore had no title to said property; that the machinery, for the conversion of which the judgment was rendered, includes the value of one electric motor, the title to which is conceded to be in a stranger to this action. It is also asserted the court erred in its construction of the document upon which the title to the machinery in question depends, and that the findings and judgment are not supported by the evidence.

The plaintiffs Louie, John and Ernest Bacigalupi own the Wallace Quartz Mining Claim in Tuolumne County, together

with certain mining equipment, fixtures and improvements attached thereto. The machinery upon the property was affixed thereto by means of bolts secured in concrete foundations. The rails, cars, electric hoist, compressor, cables, belts, blower, pipes, drills, dies, jacks and other equipment and tools were used in connection with the operation of the mine. July 23, 1930, the owners executed and delivered to the defendant H. & H. Mining Corporation, an agreement to sell to it this mine with its attached machinery, equipment, fixtures and improvements, for the sum of $50,000, to be paid in specified installments within a period of four years from the date thereof. This agreement requires the purchaser to take immediate possession of the property, make all necessary improvements, employ and pay workmen and operate the mine in a practical and workmanlike manner, extracting and promptly marketing all ore therefrom. It is specifically provided that fifteen per cent of the gross output of all ore extracted from the mine shall remain the property of the vendors, and that the proceeds from the sale of all ore shall be paid to the First National Bank of Sonora, and fifteen per cent thereof shall be credited to the vendors as a part of the purchase price of the property. The document provides for the execution and deposit of a deed of conveyance to the property with the First National Bank of Sonora, with instructions to deliver it to the H. & H. Mining Corporation, when the purchase price is fully paid. The instrument, which is therein frequently termed an "agreement", refers to the execution and delivery of the deed of conveyance in the following language:

"This contract shall be executed in triplicate, and a good and sufficient deed of conveyance shall be executed by the said first party conveying said premises to the said second party, which said deed, together with a copy of this agreement and the abstract of title shall be deposited in the said First National Bank of Sonora, as soon as the first parties shall have received $500 under the provisions of this contract, to be held by said bank subject to the terms and conditions of written instructions which said instructions shall provide that upon the full payment to the said first party of the sum of $50,000.00, such deed, abstract of title and contract shall be at once delivered to the said second party, or

to such person or persons as they may direct in writing. Time is of the essence of this agreement."

Paragraph IX of this agreement provides for the forfeiture of all money which is paid upon the purchase price of the property, in the event of a breach or abandonment of the contract by the purchasers. It also provides for the surrender and restoration to the owners of the mining property together with all machinery, equipment and improvements, in the event of such breach or abandonment. This paragraph reads in part:

"In the event that the said second party shall at any time decide and determine to cease their mining operations upon said premises, then and in that event they hereby agree to surrender possession of said premises to the said first party . . . and to deliver to the said first party all equipment and improvements received by them under and by the terms of this agreement in as good condition as when said premises were taken over, except as the same may have deteriorated by use thereof and the said second party agrees to surrender to the said first party any and all improvements placed upon said premises by said second party. . . .

"In case any payment or payments be made under the provisions of this agreement and then for any reason said second party fails to keep the covenants herein all such payments so made shall forever be the property of the said first parties and in such case considered as rental for the detention of said mining premises."

Pursuant to this agreement the H. & H. Mining Corporation took immediate possession of the property and operated the mine for a period of about fourteen months. It does not appear what quantity of ore was extracted, or what payments were applied to the purchase price of the mine. There is no controversy over the forfeiture of these payments. In November, 1931, it appears that a quantity of ore was sold by the H. & H. Mining Corporation without accounting to the owners for their fifteen per cent of the proceeds therefrom as required by the contract. Some difficulty arose over this breach. The purchaser of the mine ceased operations therein and abandoned the mine and the contract of purchase thereof, about December 6, 1931. The following day the H. & H. Mining Corporation, in consideration of the sum of $500, sold, transferred by bill of sale and

delivered to Western Machinery Company all the mining machinery, equipment, fixtures and tools which had been received from the respondent under the terms of the contract. With full knowledge on the part of the Western Machinery Company and Sam Hamilton, its agent, that the respondents claimed to be the owners of all said property, they entered the mine, removed and appropriated all the machinery, equipment, fixtures and tools, separating from their concrete foundations such fixtures as were permanently attached thereto. This machinery and property, against the protest of the respondents, was carried away in trucks. The property which was appropriated did include one thirty horse-power electric motor which does not belong to the respondents.

This suit was then commenced for damages for the dismantling of the mine and appropriation of the machinery, fixtures and tools. The court adopted findings and rendered a judgment of $750 against the appellants. All the material allegations of the complaint were found to be true. Among other facts determined, the court found that the Bacigalupi brothers owned the mine in question, together with the machinery, fixtures, tools and improvements attached thereto; that certain machines were attached to concrete foundations, and the balance of the tools and equipment were used in the operation of the mine; that the agreement to purchase the mine and machinery, heretofore referred to, was executed by the respective parties thereto; that the H. & H. Mining Corporation took possession and proceeded to operate the mine pursuant to the provisions of the agreement of purchase and sale thereof; that the terms of the contract were subsequently breached by the purchaser, and that the mine and the operation thereof were abandoned by the purchaser on December 6, 1931; that the purchaser wrongfully sold the machinery, fixtures and tools belonging to the plaintiffs; that the Western Machinery Company and Sam Hamilton, with full knowledge of plaintiffs' claim of ownership of the machinery, fixtures and tools, entered the mine, detached the fixtures and removed and appropriated all the machinery, fixtures and tools mentioned in the complaint; that the fixtures which were attached to concrete foundations constituted "improvements" as that term is used in the contract, and that "the reasonable value of said fixtures in place upon

said property as a working unit with which to work and operate said property as mining property and which was so destroyed and removed as aforesaid by defendants, was . . . of the reasonable value in place upon said property of the sum of Seven Hundred and Fifty Dollars ($750.00)''.

The record contains ample evidence to support the findings and judgment of the court. ■ From a careful consideration of all the terms of the instrument which the appellants designate as a lease, we are persuaded that it must be construed to be a conditional agreement of purchase and sale of the Wallace Quartz Mining Claim, together with the machinery, fixtures, improvements and tools connected therewith.

The appellants contend that paragraph IX of the contract requires the purchaser, in the event of abandonment of the mine, to return to the owners only such machinery and equipment as was delivered to the purchaser by the owners thereof, and upon the contrary that they are not required to also deliver such machinery or equipment as was subsequently installed by the purchaser after taking possession of the mine. That paragraph provides that in the event of abandoning the mine the purchaser shall "surrender possession of said premises . . . and deliver . . . all equipment and improvements received by them under and by the terms of this agreement, . . . and all improvements placed upon said premises by said second party''.

The contract for purchase of the mine contained no provision authorizing the vendee to remove any equipment or machinery acquired at the time of the execution of the agreement or such as was subsequently installed by the vendee as a part of the mining equipment. The controversy in the present case is over the right of the vendee to remove from the mine equipment which was supplied by it for the operation of the mine pursuant to contract, and which was permanently attached and bolted to concrete foundations.

■ It is settled as the law of this state that when an owner contracts to sell a mine, without specifically authorizing the removal of machinery, fixtures or improvements which are installed by the vendee and which are permanently attached thereto, in the event of abandoning the mine or forfeiting the contract, such fixtures become a part of the realty and may not be detached or removed by the vendee.

(Civ. Code, sec. 661; *Conde* v. *Sweeney,* 16 Cal. App. 157 [116 Pac. 319] ; *Pomeroy* v. *Bell,* 118 Cal. 635 [50 Pac. 683] ; *Southern Pacific Land Co.* v. *Kiggins,* 110 Cal. App. 56 [293 Pac. 708] ; *Wooton* v. *McAdoo,* 110 Cal. App. 48 [293 Pac. 694] ; *Brush* v. *Bohan & Co.,* 102 Cal. App. 457 [283 Pac. 126].) ▉ But the appellants contend that since paragraph IX of the contract, in the event of a breach thereof, requires only the surrender of "all *equipment* and improvements *received by them* under and by the terms of this agreement", and on the contrary, requires the surrender of only "all *improvements* placed upon said premises by said second party", it was not required to deliver to the vendor, machinery or equipment which was subsequently installed by the vendee. It is asserted this language specifically authorized the removal of any machinery or equipment which was installed by the vendee for the reason that mining equipment and machinery may not be deemed to be in the nature of "improvements".

We are of the opinion the contract may not be so construed. There may be conditions under which a distinction should be drawn between "improvements" to real property on one hand, and machinery and equipment upon the other hand. That distinction, however, does not apply to the construction of the contract under the circumstances in the present case. Where the equipment is permanently attached and bolted to concrete foundations which are installed on the real property, it is reasonable to construe the term "improvements" to include such machinery or equipment. (*Bemis* v. *First Nat. Bank,* 63 Ark. 625 [40 S. W. 127, 128].) Under the foregoing authority we are satisfied the equipment in question is a part of the realty and that the vendee was not authorized by contract to detach or remove it.

▉ Finally the appellants contend that the evidence is insufficient to support the finding of damages in the sum of $750, for the reason that one thirty horsepower electric motor was included with the property which was removed. We think the evidence is adequate to support the judgment even when the value of the electric motor is excluded. The suit is not for the mere value of the machinery which was removed. It is a suit for damages for the dismantling, detachment and removal of the equipment and machinery. The court found that the value of the fixtures "in place

upon the property as a working unit" was the sum of $750. This contemplates the inclusion of an item of damages which might be incurred by restoring similar machinery "in place upon the property as a working unit". Disregarding the value of cables, rails, pipe, forge and other miscellaneous tools and accessories, which were taken by the appellants, Mr. Howe, who was called as a witness in behalf of the defendants, testified that the hoist was worth $250, the compressor was worth $300, the jackhammer was worth $125 and that in addition thereto it was reasonably worth $50 each to install the motor and the compressor. The value of the three items of equipment, plus the cost of installation, thus exceeds the full amount of the judgment. The findings and judgment are therefore adequately supported by the evidence.

 The appellants may not complain that the judgment fails to definitely determine that the coplaintiffs, Rundell and Scanavino, had no interest in the property in question. (Sec. 578, Code Civ. Proc.) The court does find that the quartz mine and the machinery, fixtures and tools which were taken by the appellants were "owned entirely by the plaintiffs, Louie Bacigalupi, John Bacigalupi and Ernest Bacigalupi". Since the other plaintiffs were parties to the action, this precludes them from asserting any title thereto in the future.

The judgment is affirmed.

Plummer, J, and Pullen, P. J., concurred.