[Civ. No. 654.   Fifth Dist.   Aug. 19, 1966.]

GAIL BAUMAN, a Minor, etc., et al., Plaintiffs and Appellants, v. LESLIE BEAUJEAN et al., Defendants and Respondents.

Friedman & Collard and Morton L. Friedman for Plaintiffs and Appellants.

McGregor, Bullen & Erich and George W. Bullen for Defendants and Respondents.

CONLEY, P. J.—Gail Bauman, who was approximately three and one-half years of age at the time of her injury, and her father, Russell H. Bauman, brought suit against the defendant owners of a dog which bit Gail on the Beaujean home premises. While the pleadings and, to a certain extent, the pretrial order seem to implement issues under the old vicious animal theory and the defenses adjusted to that theory, it is the conclusion of counsel for both appellants and respondents that the case was tried, and that the appeal turns exclusively, on the provision of section 3342 of the Civil Code.

In this connection, appellants' opening brief states: "Plaintiffs' case was tried before the jury on the theory that *California Civil Code section 3342* was applicable and that the defendants were liable under the terms of said section.

"...................................

". . . the only issues before the jury under the present case were: whether said minor child was bitten by the dog; whether she was on the premises lawfully of the defendants."

While the defendants plead assumption of the risk and contributory negligence (*Gomes* v. *Byrne,* 51 Cal.2d 418 [333 P.2d 754]), they do not press these defenses and did not at the trial as there was no evidence before the jury showing the immediate circumstances under which the little girl was bitten or what she did prior to the attack on her by the dog.

Our inquiry is thus limited to whether there was any liability under section 3342 of the Civil Code, which reads as follows: "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness. A person is lawfully upon the private property of such owner within the meaning of this section when he is on such property in the performance of any duty imposed upon him by the laws of this State or by the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner."

It is conceded that Gail was bitten by the dog, at a place on the private property of the defendants. The case turns on whether Gail was in the backyard of the defendants ". . . upon the invitation, express or implied" of the owners. The testimony in the case is uncontradicted that there was no express invitation to Gail to come upon the property. The essence then of our inquiry is whether Gail was there at the implied invitation of the Beaujeans. The jury found that she was not and brought in a verdict in favor of the defendants. We have concluded that there is substantial evidence supporting the verdict, and that we, therefore, cannot reverse the judgment. Incidentally, this conclusion conforms with the denial by the trial judge of plaintiffs' motion for a new trial.

The Baumans and the Beaujeans had been living side by side for about two years. Gail was three and a half years old at the time of the incident; she had often played with the Beaujean girl, Kathy, who was then about seven and a half years of age. It was customary for Gail to go over to the Beaujean house and ask if Kathy was home, and if she was available the two would play in the Beaujean house or in the yard of either family.

On the morning of the injury to the little child, Mrs. Bauman was ill, and her doctor suggested on the telephone that she be brought to his office immediately; thereupon Mr. Bauman called their neighbors and arranged for Vickey Anderson, Mrs. Beaujean's sister, to come over and act as a "baby-sitter" as she had done many times for the Baumans. The Baumans were away from home for about an hour and a half or two hours; when they returned from the doctor's office, they found that Gail had been bitten by the Beaujeans' dog, Domino. The child was then sitting in Vickey's lap with her face showing dog bites and raked with claw marks. The dog was a black, spaniel type, weighing about 30 to 40 pounds.

Mr. Bauman testified that when he and his children had been visiting at their neighbors' house, the Beaujeans would put the dog in the bedroom or in the garage, because it had snapped at his son and daughter. The Beaujeans had three children. Kathy, the youngest, and Gail often played together. Each would go over to the other's house to find, and play with, her little friend. Mr. Bauman testified that often Gail played in his backyard with Kathy, and that they also played in the backyard of the Beaujeans. There was no type of enclosure at either end of the fence, which ran part way toward the rear of the lots, and, consequently, people and animals were not prevented from passing freely from one yard to the other. Mrs. Beaujean insisted at the trial that, while the two children played in her frontyard or in her house, they did not usually play in her backyard. However, Mrs. Beaujean testified that Kathy often played with the Bauman children in the Bauman's backyard, and also that she had never told Mr. and Mrs. Bauman that she did not want Gail to play in the Beaujean's backyard; she insisted that the two little girls rarely played in the Beaujeans' backyard, and that Gail never played there alone.

Mrs. Beaujean further stated that at the time of the incident they had had the dog for four years; that as a general rule he was kept in the house, usually in the utility room; if someone went near the dog, he would growl and bare his teeth if he had food before him at the time, and that he would chase cars if he were let out of the house. Shortly prior to the incident, the dog was tied by a chain permanently attached to the middle of the fence; the chain was less than the length of one-half of the fence.

It should be remembered that the plaintiffs had the burden of proving an implied invitation by the Beaujeans to the little

girl to be present or play in their backyard. There is substantial evidence in the record to the contrary. There never was an invitation to Gail to play alone in the backyard of the Beaujeans' residence, and the mother of the child did not permit her to play by herself in the neighbors' enclosure.

It is contended by the appellants that a child cannot be a trespasser. This contention appears to be wrong. ▪▪▪ While an infant aged three and one-half years cannot be guilty of contributory negligence as a matter of law in this state, this is not equivalent to saying that a small child cannot be a trespasser. In *Fullerton* v. *Conan,* 87 Cal.App.2d 354 [197 P.2d 59], the trial court found that a five-year-old child had been told not to go into that part of defendant's premises where the dog was kept, but the plaintiff did enter the backyard nevertheless without the consent of the defendant, and the court found that, consequently, the child was a trespasser. The District Court of Appeal in that case stated that the conclusion reached by the trial court that the child was a trespasser simply meant that the infant was not lawfully upon the property at the point where the biting occurred and that such findings were supported by the evidence. A petition for hearing by the Supreme Court was denied.

In 35 California Jurisprudence, Second, Negligence, section 97, pages 606-607, it is said: ''Notwithstanding the general rule as to one's duty to use ordinary care in managing his property so as to avoid injuring others, the law imposes no duty on the possessor of property to maintain his premises in such a condition that they will be safe for one trespassing thereon, or for one who may be present as a mere licensee. As to such persons, the possessor is ordinarily liable only for wilful or wanton infliction of injury. It follows that one who, uninvited and either as a trespasser or a licensee, enters the premises of another assumes all the ordinary risks attaching to the condition of the premises.'' In *Smythe* v. *Schacht,* 93 Cal.App.2d 315 [209 P.2d 114], the court found that there was sufficient evidence to sustain the inferential finding of the jury that there was at least an implied invitation to play in that portion of the yard where the assault by the dog took place. ▪▪▪ But in the instant case, on the contrary, there is ample evidence to support the jury's finding that no such implied invitation was extended.

In 4 American Jurisprudence, Second, Animals, section 105, page 353, it is said : ''The trespasser here referred to is not one who enters another's premises with the intention of commit-

ting a crime thereon, but rather, one who is a mere technical or unintentional trespasser, . . .''

In *Ellis* v. *D'Angelo*, 116 Cal.App.2d 310, 313-315 [248 P.2d 63], a four-year-old boy attacked a baby-sitter, and she brought suit for her injuries; in the opinion, Justice Dooling quoted with approval from 27 American Jurisprudence, Infants, section 90, pages 812-813 to the effect that: '' '. . . Infancy, being in law a shield and not a sword, cannot be pleaded to avoid liability for . . . trespasses, . . .' ''

The correct rule is thus stated in *Heller* v. *New York, N. H. & H. R. Co.*, 265 F. 192, 194: ''Every unauthorized entry on another's property is a trespass and any person who makes such an entry is a trespasser. A trespasser is one who goes upon the premises of another without invitation, express or implied, and does so out of curiosity, or for his own purposes or convenience, and not in the performance of any duty to such owner. It is not necessary that one making such an entry should have any unlawful intent. . . . A child, even of tender years, may be a trespasser. [Citing cases.]''

A child may be a trespasser (87 C.J.S., Trespass, § 1, p. 956) even though too young to be capable of contributory negligence.

The appellants also object, in passing, to an instruction given by the court relative to contributory negligence and the refusal of another proposed instruction which told the jury that a child of three-and-one-half years of age is incapable of contributory negligence as a matter of law. In view of the concession by appellants on the appeal that the issues are restricted, it would seem clear that no instructions should have been given on contributory negligence. For it is improper to give instructions on contributory negligence in cases where there is no evidence thereof. (*Burks* v. *Blackman,* 52 Cal.2d 715, 719 [344 P.2d 301]; *Hiner* v. *Hubbard,* 240 Cal.App.2d 63, 68 [49 Cal.Rptr. 157].)

The instruction given by the court is, in part, as follows: ''. . . you will have in mind that a child is not held to the same standard of conduct as an adult, but is only required to exercise that degree of care, and to have that knowledge which ordinarily are exercised and possessed by children, of like age, mental capacity and experience.

''There is no precise age at which, as a matter of law, a child comes to be held accountable for her actions by the same standard as applies to an adult. It is for you to determine the

mental capacity and experience of the Plaintiff, Gail Bauman, and whether or not, under the rules I have announced, she may reasonably be said to have brought upon herself the injury here in question.''

The refused instruction specifically told the jury that Gail Bauman was too young to be guilty of contributory negligence. If contributory negligence had been a proper subject of instructions at the trial, the quoted portion of the instruction actually given should have been refused and the refused instruction clearing the child of contributory negligence because of her age should have been given. ▉ It is well established that a child of three-and-one-half years is incapable of contributory negligence as a matter of law. (*Greene* v. *Watts,* 210 Cal.App.2d 103 [26 Cal.Rptr. 334]; *Walker* v. *Fresno Distributing Co.,* 233 Cal.App.2d 840, 848 [44 Cal.Rptr. 68]; *Morningred* v. *Golden State Co.,* 196 Cal. App.2d 130, 137 [16 Cal.Rptr. 219]; Prosser on Torts (3d ed.), pp. 462, 464.)

▉ However, the instruction actually given was proposed by the plaintiffs themselves and, consequently, there could not be a reversal of a judgment for invited error caused by the appellants. (3 Witkin, Cal. Procedure (1954) Appeal, § 92, pp. 2257-2258; *Collins* v. *Graves,* 17 Cal.App.2d 288, 297 [61 P.2d 1198]; *Devincenzi* v. *Faulkner,* 174 Cal.App.2d 250, 253 [344 P.2d 322, 74 A.L.R.2d 764]; *LaFleur* v. *Hernandez,* 84 Cal. App.2d 569, 574-575 [191 P.2d 95].)

▉ We revert to what was said earlier in this opinion. The only question on the appeal is whether there was substantial evidence to justify the finders of fact in reaching the conclusion that there was no implied invitation on the part of the Beaujeans to Gail to play in the backyard of their residence at the time she sustained her injuries. There is ample evidence to justify this implied finding of fact.

The judgment is affirmed.

Stone, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.