[Civ. No. 48926. First Dist., Div. One. June 14, 1982.]

GILBERT I. SMITH et al., Plaintiffs and Appellants, v.
CAP CONCRETE INC., Defendant and Respondent.

**COUNSEL**

William G. Felice and Dean C. Storkan for Plaintiffs and Appellants.

Varty & Maul, Howard & Varty and Gerald E. Varty for Defendant and Respondent.

## OPINION

**NEWSOM, J.**—This is an appeal from a judgment entered after court trial based upon stipulated facts, which we recapitulate as follows.

Appellants are the owners of real property located in Alviso, California, which, beginning in 1971 or 1972, was leased by oral agreement to George Interiano. During the course of the lease, without appellants' knowledge Interiano sublet the property to Carson Grimes, who in 1976 was engaged in the used lumber business.[1] Grimes asked Gregory Knapp, an agent for respondent, to deliver broken concrete material to this new business location for use as fill. Knapp was acquainted with Grimes from earlier business transactions, and had, in fact, previously delivered substantial amounts of "broken concrete wash-out" to Grimes' lumberyard at another location.

Knapp visited the location mentioned by Grimes, and made final arrangements with him for delivery of the concrete fill material. Thereafter, around Christmas of 1976, 60 to 70 loads of the concrete material were delivered by respondent or its subhauler and left on appellants' property.

Appellants gave neither Grimes nor Interiano permission to allow any concrete material to be left on the premises. It was not until January of 1977 that appellants learned of the presence of the concrete on their property.

The stipulation contains these additional pertinent facts: (1) the agreed cost of removal of the concrete material was $6,000; and (2) according to Knapp, he was informed by Grimes that the property owner had given permission to "fill the property with the concrete material."[2]

Appellants argue that the evidence recited in the stipulation of facts sufficiently establishes a trespass by respondent. Respondent claims that appellants were neither in actual nor constructive possession at the time

---

[1] The stipulation does not state whether Grimes was, in fact, a sublessee of appellants' property.

[2] Appellants objected to Knapp's proffered testimony relating Grimes' statements as hearsay; respondent submitted that such testimony was nonhearsay since it was not offered for the truth of the matter, but rather merely to show respondent's state of mind when the concrete was delivered.

of the alleged tortious acts, and thus cannot bring an action for trespass.[3]

■ The cause of action for trespass is designed to protect *possessory*—not necessarily ownership—interests in land from unlawful interference. (*Allen* v. *McMillion* (1978) 82 Cal.App.3d 211, 218 [147 Cal.Rptr. 77]; *Shusett, Inc.* v. *Home Sav. & Loan Assn.* (1964) 231 Cal.App.2d 146, 150 [41 Cal.Rptr. 622]; *Brenner* v. *Haley* (1960) 185 Cal.App.2d 183, 187 [8 Cal.Rptr. 224]; Prosser, Law of Torts, (4th ed. 1971) § 13, p. 68.) The proper plaintiff in an action for trespass to real property is the person in actual possession; no averment or showing of title is necessary. (*Lightner Mining Co.* v. *Lane* (1911) 161 Cal. 689, 694 [120 P. 771]; *Whittaker* v. *Otto* (1967) 248 Cal.App.2d 666, 672 [56 Cal.Rptr. 836]; *Smpardos* v. *Piombo Construction Co.* (1952) 111 Cal.App.2d 415, 423 [244 P.2d 435].) As noted in *Williams* v. *Goodwin* (1974) 41 Cal.App.3d 496, 508 [116 Cal.Rptr. 200], "In an action of trespass upon real property plaintiff must prove the fact of his possession of the premises, . . ."[4]

■ An action for trespass may technically be maintained only by one whose right to possession has been violated (see generally, Prosser, Law of Torts, (4th ed. 1971) § 13, p. 69; *Uttendorffer* v. *Saegers* (1875) 50 Cal. 496, 497-498); however, an out-of-possession property owner may recover for an injury to the land by a trespasser which damages the ownership interest. (*Rogers* v. *Duhart* (1893) 97 Cal. 500, 504-505 [32 P. 570]; *Whittaker* v. *Otto, supra,* 248 Cal.App.2d 666, 675-676;[5] *Shusett, Inc.* v. *Home Sav. & Loan Assn., supra,* 231 Cal.

[3]The trial court's "Memorandum of Decision," which respondent sets out in full in its brief, finds that appellants' lack of possession precluded recovery for trespass damages. At respondent's request, we augment the record with the memorandum of decision, which was not included as part of the original clerk's transcript.

We also note that since the trial court's ruling was based upon stipulated facts, the issue presented to this court is one of law. (*Western States Bankcard Assn.* v. *City and County of San Francisco* (1977) 19 Cal.3d 208, 213 [137 Cal.Rptr. 183, 561 P.2d 273].)

[4]Witkin agrees; he states: "The action [for trespass] may be brought only by a person in actual or constructive *possession*, but he need not show *legal title*." (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 350, p. 2611.)

[5]In *Whittaker*, the court explained: "'It is entirely immaterial whether or not plaintiffs had the technical possession requisite to the maintenance of trespass *quare clausum fregit* at common law; for since they were entitled to the exclusive possession and enjoyment of the mining claim, and had title to occupy same, they could maintain a civil action under the Code for any unlawful injury thereto committed by a stranger without right of title.'" (248 Cal.App.2d at p. 674.)

App.2d 146, 150.) In our view, the inquiry in a case involving unlawful intrusion on property rights should focus upon the nature of the injury and the damages sought: If the right to possession has been abridged and possessory rights damaged, the possessor may complain by way of an action for trespass; if, on the other hand, an intruder harms real property in a manner which damages the ownership interest, the property owner may seek recovery whether the cause of action be technically labeled trespass or some other form of action, such as waste.

Here, appellants plainly had no possessory interest in the property, and, consequently no right to complain of unlawful interference with possessory rights. Their claim rests upon damage to their ownership interest.

The action for waste has traditionally protected such interests. (3) As our high court has explained: "'[W]aste is conduct (including in this word both acts of commission and of omission) on the part of the person in possession of land which is actionable at the behest of, and for the protection of the reasonable expectations of, another owner of an interest in the same land ... Thus, waste is, functionally, a part of the law which keeps in balance the conflicting desires of persons having interests in the same land. (5 Powell on Real Property (1974) § 636, pp.5-6.)" (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 597-598 [125 Cal.Rptr. 557, 542 P.2d 981].) Waste evolved and broadened from a cause of action designed to protect owners of succeeding estates against the improper conduct of the person in possession which harmed and affected the inheritance, to a legal means by which any concurrent nonpossessory holders of interest in the land are enabled to prevent or restrain harm to the land committed by persons in possession. (*Id.*, at p. 598.)

"'To constitute waste, there must be an injury to the inheritance (C.C. 818), ...'"[6] (*Hardie* v. *Chew Fish Yuen* (1968) 258 Cal.App.2d 301, 304 [65 Cal.Rptr. 594].) "'Injury to the inheritance, which under the common law would be termed "waste" can only be proved, with the possible exception of a few instances, by evidence of acts which injur-

---

[6]Civil Code section 818 states: "The owner of a life estate must ... do no act to the injury of the inheritance."

iously affect the market value of the property.'" (*Eastman* v. *Peterson* (1968) 268 Cal.App.2d 169, 175 [73 Cal.Rptr. 803]; *Sallee* v. *Daneri* (1942) 49 Cal.App.2d 324, 327 [121 P.2d 781].) Proof of "conduct which has resulted in substantial depreciation of the market value of the land" establishes waste. (*Ibid.*)

■ Respondent claims that appellants' action for waste should fail for two reasons: (1) respondent was a mere stranger to the property, without a possessory interest; and (2) no "injury to the inheritance" has been established by appellants.

■ As to the first of these arguments, while we acknowledge that statutes and common law envision waste primarily as an action by an out-of-possession owner against an offending party *in possession* (Civ. Code, §§ 818, 840; Code Civ. Proc., § 732; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 327, p. 2032), nothing in the statutes or case law requires that the action for waste be directed solely against a party with an interest in the land. In fact, we find the contrary to be true.

Civil Code section 826 states, in part that: "A person having an estate in fee, in remainder or reversion, may maintain an action for *any* injury done *to the inheritance*, . . . ." (italics added); no limitation or consideration of the possessory interest of the defendant is manifested under the statute.

We find further support in appellate decisions for a common law waste action against a nonpossessory defendant. It has been specifically held that those who enter upon property with the consent of a possessor have sufficient privity of title to be subject to an action for waste as licensees. (*Southern Pacific Land Co.* v. *Kiggins* (1930) 110 Cal.App. 56, 61 [293 P. 708];[7] *Fuller* v. *Montafi* (1921) 55 Cal.App. 314, 320

---

[7]In *Southern Pacific Land Co.* v. *Kiggins, supra,* 110 Cal.App. 56 the action was labeled one for trespass, and so the court initially struggled with the question of whether an action for trespass could be maintained "'[b]y one who was not in the actual possession of the land at the time the acts complained of were performed. . . .'" (*Id.,* at p. 59.) Without resolving this issue, the court concluded: "'. . . if the *facts* alleged and proved are such as would have entitled the plaintiff to relief under any of the recognized forms of action at common-law, they are sufficient as the basis of relief, whatever it may be.'" (*Id.,* at p. 60.) From this conclusion, the court proceeded to its discussion of the applicablity of an action for waste.

[203 P. 406].) ■ Such was the case here, and we accordingly conclude that by acting under the authority given by Grimes, respondents became vulnerable to a cause of action for waste. (*Ibid.*)

We also find, contrary to respondent's contention, that an "injury to the inheritance" was suffered by appellants, which supports a cause of action for waste.

■ Waste will be found only when the market value of property is permanently diminished or depreciated. (*Eastman v. Peterson, supra,* 268 Cal.App.2d 169, 174; *Bliss v. Security-First Nat. Bank* (1947) 81 Cal.App.2d 50, 55 [183 P.2d 312].) While loss of market value is the ultimate test (*Richards v. Silveria* (1929) 97 Cal.App. 166, 170 [275 P. 478]), it is a measure which will be applied flexibly, having in mind the "quantity or quality of the estate, the nature and species of property, [and] the relation to it of the person charged to have committed the wrong." (*Southern Pacific Land Co v. Kiggins, supra,* 110 Cal.App. 56, 61.)

■ In our view, the record amply supports a finding that appellants' ownership interest is substantially and permanently devalued by the presence of the concrete fill left by respondent. The stipulated facts establish that the concrete is valueless—even as fill material. And it can hardly be questioned that broken concrete debris renders the land less attractive and useable: the record reveals, for example, that the concrete precludes use of the land for growing crops.

Respondent submits that waste has traditionally been found only where land has been destroyed or allowed to deteriorate, as by removal of some valuable resource. Here, in contrast, it is argued that an addition was made to the land. We think this argument pays undue homage to empty form. In our view it is enough that respondent's conduct reduced the value of the subject property, whether by addition or subtraction. (Civ. Code, § 826.) The damage we discern is palpable. Depreciation of the market value of the property in its present condition

can easily be inferred from the stipulated facts, and if the concrete is not removed, will clearly be permanent. This suffices to establish waste.

■ Respondent next argues that Grimes' consent to delivery of the concrete should vitiate appellants' claim for damages. As the possessor of the property, it is contended, Grimes can bring no action for trespass since he consented to the entry—lack of consent being an element of the tort of trespass. (*Civic Western Corp.* v. *Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 16 [135 Cal.Rptr. 915]; *Bauman* v. *Beaujean* (1966) 244 Cal.App.2d 384, 389 [53 Cal.Rptr. 55].)

Appellants gave no consent to the entry and the authorization given respondents by Grimes does not of course justify their interference with *appellants'* ownership rights. A good faith belief that entry has been authorized or permitted provides no excuse for infringement of property rights if consent was not in fact given by the property owner whose rights are at issue. (*Don* v. *Trojan Construction Co.* (1960) 178 Cal. App.2d 135, 138 [2 Cal.Rptr. 626];[8] see also *Tweedy* v. *Parsons* (1933) 217 Cal. 447, 450 [19 P.2d 497].) Accordingly, by showing they gave no authorization, appellants established the lack of consent necessary to support their action for injury to their ownership interests. (*Don, supra*, at p. 138; see also *Isom* v. *Rex Crude Oil Co.* (1903) 140 Cal. 678, 679-680 [74 P. 294].)

■ Whether viewed as an action for trespass or waste, respondent's unauthorized interference with appellants' ownership rights requires redress in the form of damages for loss of market value or cost of removal. (*Rogers* v. *Duhart, supra,* 97 Cal. 500, 504; *Don* v. *Trojan Construction Co., supra,* 178 Cal.App.2d 135, 138.)

---

[8]In *Don*, a contractor having neither a possessory nor ownership interest in the subject property gave permission to the defendant subcontractor to store dirt on the land. In rejecting the subcontractor's claim of consent, the court explained: "The fact that the occupier thought he had the owner's consent, where there was no showing of ownership of the 'consenting' person, nor any agency, actual or ostensible, of that person to act for the owner, does not in any way limit the amount of actual damages to be awarded. 'One who intentionally enters land in the possession of another without a privilege to do so is liable ... although he acts under a mistaken belief of law or fact, however reasonable, not induced by the conduct of the possessor, that he ... (b) has the consent of the possessor or of a third person who has the power to give consent on the possessor's behalf ....' (Rest, Torts, vol. 1, § 164.)" (*Id.,* at p. 138.)

■ ■■■ The judgment is reversed, and the case remanded to the trial court for the limited purpose of determining the appropriate award of damages.[9]

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied July 14, 1982.

---

[9]The measure of damages in California for tortious injury to property is "the amount which will compensate for all the detriment proximately caused thereby ...." (Civ. Code, § 3333.) Such damages are generally calculated as the difference between the value of the property before and after the injury, but an alternative measure of damages is the cost of restoring the property to its condition prior to the injury. (*Heninger v. Dunn* (1980) 101 Cal.App.3d 858, 861-862 [162 Cal.Rptr. 104].) The formula adopted should be the one most appropriate to compensate the injured party for the loss sustained, normally the lesser of the two amounts. (*Id.*, at pp. 862, 863.)

In the case before us, it appears that the cost of removal of the concrete will be the lesser and more appropriate recovery for appellants, and if so should be the measure of damages granted. (*Id.*, at pp. 862-863.) The determination, however, is for the trial court. (*Dandoy v. Oswald Bros. Paving Co.* (1931) 113 Cal.App. 570, 573 [298 P. 1030].)