In re Robert L. **MILLS**, Debtor.

**SDRAWDE TITLEHOLDERS, INC.**, a California corporation, Plaintiff/Appellee,

v.

Robert Lee **MILLS**, etc., Defendants/Appellants.

BAP No. CC 86–1122 MoVMe.
Bankruptcy No. LA 83–00140 GM.
Adv. No. 83–3882 GM.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Oct. 29, 1986.

Decided April 21, 1987.

Jerry H. Green, Law Offices of Jerry H. Green, Los Angeles, Cal., for defendants-appellants.

Joseph D. Frascella, Joseph D. Frascella, P.C., Santa Monica, Cal., for plaintiff-appellee.

Before MOOREMAN, MEYERS and VOLINN, Bankruptcy Judges.

1. The deed of trust signed by Mills indicates a down payment of $20,000.00. Appellant argues in his brief that he spent approximately $192,-000.00 in down payment, mortgage payments and repairs. However, in briefs filed before the

## OPINION

MOOREMAN, Bankruptcy Judge.

By this appeal, the debtor challenges an order of the bankruptcy court precluding the discharge of a debt resulting from the operation of a hotel by the debtor. The trial court found that the debtor had committed waste during his possession of the hotel by failing to adequately maintain the premises. On this basis, the court refused discharge of a debt owing to the holder of the deed of trust pursuant to 11 U.S.C. Section 523(a)(6). For the reasons set forth below, we affirm.

## FACTS

The debtor herein, Mills, purchased a 67 unit hotel building from Martin Edwards on December 31, 1980, with a sales price of $900,000 and deed of trust in the amount of $880,000.[1] Prior to selling the hotel to Mills, Edwards spent approximately two years and $200,000.00 [R.T. p. 18, lns. 17–25] to repair and refurbish the building to a reasonable condition. [See e.g. R.T. lns. 14–16] At the time of the transfer to Mills, gross income on the property was approximately $14,000.00/month [R.T. p. 19, ln. 25—p. 20, ln. 8] and the building was about 95 percent occupied. [R.T. p. 20, lns. 9–12]

During negotiations for the sale of the building, Mills represented to Edwards that he and his wife had substantial experience with property management and that he was currently managing another hotel property. [R.T. p. 76, lns. 1–9; Finding of Fact # 12]

Edwards conveyed his interest to the plaintiff herein, Sdrawde, and Mills subsequently took possession of the unit in February, 1981. Upon receipt of the premises by Mills, the building was in compliance with applicable codes and ordinances and in satisfactory condition and repair with no known infestation of roaches and/or other vermin. [R.T. p. 12–16, 70; Finding of Fact # 11] Edwards discussed with Mills

trial court he argued that this amount was $150,000.00. While the calculation of these amounts differs, it does not affect the disposition herein.

the various aspects of the operation of the premises as a hotel rather than as apartments (e.g. local law allowed easier removal of problem renters in a hotel). In addition, Edwards informed Mills of the numerous systems he had devised to maintain the premises and avoid vandalism, as well as providing the various forms to continue these mechanisms. Finally, Edwards offered Mills free consulting services with respect to the operation and management of the hotel and encouraged his use of these services. [See R.T. p. 40, lns. 7–25; p. 43, ln. 21—p. 44, ln. 25; p. 46, lns. 15–17; p. 47, ln. 23—p. 49, ln. 1]

Mills testified that the income from the building during his ownership was about $7,000/month. He also testified that spent approximately $3,000/month on maintenance and repairs for three months as well as making the first three monthly payments of $8,000/month due under the deed of trust with Edwards. [R.T. p. 84, ln. 24—p. 85, ln. 1; p. 89, lns. 10–17; see also p. 26, ln. 9–16] There is no dispute that Mills did not contribute any funds either to maintain or repair the premises or on the deed of trust obligation. During this latter time period, several checks were tendered to Edwards by Mills although Mills immediately stopped payment on those checks to avoid negotiation. [R.T. p. 27, ln. 12—p. 28, ln. 11; Plaintiff's Trial Exhibit # 5]

On September 3, 1981, a state court receiver removed Mills from possession based upon his failure to comply with the terms of the sales contract. As a result of Mills' default, the property was sold at a non-judicial trustee's sale, with Sdrawde purchasing the building for a bid of $100.00. At the time of the sale, the outstanding obligation owed by Mills was $606,565.67.

Upon return of the property to Edwards, an inspection was performed on the premises. From this inspection, it was determined that 48 of the 67 rooms were in violation of the state and city housing laws and ordinances. [Plaintiff's Trial Exhibit # 8 & 9; Finding of Fact # 17] The general sanitation of the building and the fire equipment were also found to be in violation of the requisite codes and ordinances.

[Id.] Two of the four communal showers had deteriorated such that they were unusable and one of the four public restrooms in the building was out of service. [Id.] In light of these conditions, the vacancy factor for the building was much higher than when Mills purchased the hotel.

In order for Edwards to restore the building to acceptable standards, he was required to spend at least $125,000.00 over the six months it took to finish the repairs. [R.T. p. 38, lns. 9–20] However, two years passed prior to achieving the income stream which had been attained prior to the sale to Mills.

Mills filed for bankruptcy protection after the trustee sale. Sdrawde, as legal title holder to the property, brought an adversary action seeking to hold non-dischargeable the amount owing to them. The basis of the action was that Mills had committed waste upon the property. After a hearing on the matter, the court found that the plaintiff was entitled to an award of $143,750.00 as a result of the waste caused by Mills, and that this award was non-dischargeable. The debtor appeals this decision on two grounds, claiming that waste does not amount to conduct sufficient to prevent dischargeability and that based upon the amount of the bid by the plaintiff at the foreclosure sale, it is precluded from obtaining such a judgment.

## STANDARD OF REVIEW

In reviewing decisions of the bankruptcy court, this Court reviews conclusions of law *de novo* and findings of fact shall not be set aside unless clearly erroneous. *See* Bankruptcy Rule 8013; *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *In re Global Development Corp.*, 759 F.2d 724, 726 (9th Cir.1985).

As set forth in 11 U.S.C. Section 523(a)(6),

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

In a recent opinion, the Ninth Circuit Court of Appeals has defined "willful and malicious" as "an intentional act which causes injury." *See In re Cecchini,* 780 F.2d 1440, 1442 (9th Cir.1986). The Court set forth the appropriate standard as follows: "Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *Id.,* at 1443, citing 8 Collier on Bankruptcy Section 523.16 (15th ed. 1983).

In the instant case, the trial court found that debtor had committed waste through willful mismanagement by failing to adequately preserve and maintain the premises in the condition in which he obtained them from the seller, during a time period during which income was not utilized to protect the property. These findings included numerous violations of fire, health and safety codes, rendering much of the premises unusable.

The debtor challenges this conclusion, contending that the mere failure to maintain premises is not waste and that there was no evidence presented that he intentionally destroyed the premises. He finally argues that this action for waste is barred under these facts pursuant to *Cornelison v. Kornbluth,* 15 Cal.3d 590, 125 Cal.Rptr. 557, 542 P.2d 981 (1975).

█ In regard to Mills' first contention, he cites *Krone v. Goff,* 53 Cal.App.3d 191, 127 Cal.Rptr. 390 (1975), where the court indicated that "waste does not embrace a breach of covenant to repair, whether the damage is caused by ordinary wear and tear or an act of God." *Id.,* 127 Cal.Rptr. at 393. While *Krone* does hold that ordinary wear and tear are excluded from the definition of waste, it is inapposite to the facts herein. The trial court found that Mills engaged in willful mismanagement, resulting in a majority of the rooms being in violation of state health, fire and safety codes. The violations included numerous plumbing problems, broken windows, holes in the walls and ceilings, unusable public baths and toilets, and the infestation of cockroaches throughout the building. The court also found that such acts and omissions by Mills were done in bad faith. These findings are not within the scope of "ordinary wear and tear" and are sufficient to support an action for waste. *See Cornelison v. Kornbluth, supra,* 125 Cal.Rptr., at 567, 542 P.2d, at 991; *Hickman v. Mulder,* 58 Cal.App.3d 900, 130 Cal.Rptr. 304, 310 (1976).

It should also be noted that the trial court's determination was not based solely upon Mills' inaction. The record reflects that Mills actively delayed Edwards from foreclosing on the property by tendering checks for the amounts owing and immediately stopping payment prior to negotiation. This combined with the fact that Mills ignored and refused all of the advice and suggestions made by Edwards and put no funds into maintenance and repair of the building for three months while he was engaged in delaying the foreclosure supports the trial court's finding that Mills acted in bad faith.

Had Mills not filed a petition for relief in the bankruptcy court, the facts surrounding the transaction would have supported an action for waste in the state court. *See e.g. Cornelison v. Kornbluth, supra,* 125 Cal.Rptr., at 567, 542 P.2d, at 991. Where parties are "[r]eckless, intentional, and at times even malicious despoilers of property ... the purchase money lender should not go remediless...." *Id.* A bankruptcy petition should not alter this result, although it should be made clear that this decision should not be construed to affect any of the traditional defenses to an action for waste. *See e.g.* Powell, *Real Property* Par. 647 (1986).

█ Further, Mills has failed to present evidence sufficient to support a finding that the trial court's determination of the facts involved herein was clearly erroneous. In order to meet this standard, evidence must be presented such that this Court is left "with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C., supra,* 105 S.Ct., at 1511 (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The debtor has not presented any

such compelling evidence as a basis for such a finding. In making its determination, the court found that Mills had previous experience in operating hotels and commercial property and that he knew that by failing to maintain the premises, there would be a substantial diminution in the value of the property. Such a finding supports the trial court's determination of non-dischargeability. Pursuant to *In re Cecchini, supra,* one need only prove an intent to act and that harm will necessarily result from the act of inaction.

Accordingly, as the record demonstrates that Mills intentionally refused to maintain the premises and that harm would necessarily result from such inaction, the order of the trial court must be affirmed.

■ Mills also challenges the ability of the plaintiff to bring this action. He claims that due to the bid by Sdrawde at the foreclosure, any claims for waste are precluded, citing *Cornelison v. Kornbluth, supra.* In *Cornelison,* the California Supreme Court made the following statement:

> If the beneficiary or mortgagee at the foreclosure sale enters a bid for the full amount of the obligation owing to him together with the costs and fees due in connection with the sale, he cannot recover damages for waste, since he cannot establish any impairment of his security, the lien of the deed of trust or mortgage having been theretofore extinguished by his full credit bid and all his security interest in the property thereby nullified. If, however, he bids less than the full amount of the obligation and thereby acquires the property valued at less than the full amount, his security has been impaired and he may recover damages for waste in an amount not exceeding the difference between the amount of his bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale.

*Id.,* 125 Cal.Rptr., at 569, 542 P.2d, at 993. The trial court found that the plaintiff bid $100.00 at the foreclosure sale, at a time when the outstanding liability amounted to $606,565.67. As the bid was not a full credit bid, damages for waste may be recovered. *See id.* The court also found that the plaintiff's security interest had been impaired in the amount of $143,750.00 by the acts and omissions of Mills. As this amount awarded does not exceed the difference between the amount of the bid and the amount of the indebtedness prior to the sale, it falls within the guidelines as set forth in *Cornelison, supra.*

Accordingly, as the record in this matter does not support the appellant's contentions, the order of the bankruptcy court is hereby AFFIRMED.

VOLINN, Bankruptcy Judge, dissenting:

Six months before filing a petition in bankruptcy, the debtor invested $150,000 to purchase a subordinate interest in a hotel for low-income transients. The Beverly Hotel was already encumbered by four liens in the total amount of $700,000. The debtor acquired the hotel believing that it would generate sufficient income to cover maintenance and debt service.[1] It rapidly became clear that his belief was unwarranted. The seller had represented to the debtor that the hotel would generate a monthly income of $14,000. The debtor never received more than $7,000 per month. The debtor asserts he spent $3,000 per month on maintenance and repairs, but such expenditures proved inadequate. During the six months the debtor had possession of the hotel, its condition deteriorated until it was in violation of a number of health and safety regulations. In addition, because of abuse by tenants, a number of its rooms became uninhabitable.

The debtor's failure to make adequate repairs appears to have stemmed directly from his negative cash flow. This predicament was compounded by financial problems arising from other property he owned. Bankruptcy soon followed. Appellee testified that in order to return the premises to an acceptable state, $125,000 of repairs were required. The bankruptcy court determined that the debtor was guilty of waste. The court held that the debtor's

---

1. Debt service was $8,000 per month, which the debtor paid plaintiff for three months.

waste was intentional and that therefore the cost of repairs would be nondischargeable under Bankruptcy Code section 523(a)(6).

The issue on appeal is whether the findings of the trial court can support a conclusion of intentional waste.

The court below and the majority have relied on the recent Ninth Circuit opinion of *In re Cecchini*, 780 F.2d 1440 (9th Cir. 1986), holding deliberately forged endorsements of checks to be conversions and therefore nondischargeable as intentional torts pursuant to 11 U.S.C. § 523(a)(6). By its very nature, conversion requires a deliberate or purposeful act with actual knowledge of the consequences or with certain consequences necessarily ensuing. For this reason, conversion is usually an intentional tort, as it was in *Cecchini*.[2]

The tort of waste, in contrast, is of a different nature. Waste is often a passive tort. Its origin is commonly in neglect or failure to perform certain acts. *Cornelison v. Kornbluth*, 15 Cal.3d 590, 594, 598–98, 125 Cal.Rptr. 557, 542 P.2d 981 (1975) (acts of omission as well as commission); *Smith v. Cap Concrete*, 133 Cal.App.3d 769, 775, 184 Cal.Rptr. 308 (1982). Normally when waste is caused by omission, the tortfeasor's level of culpability is only negligence.

In the case before us, the debtor failed to undertake certain necessary repairs and maintenance during a relatively short period, six months. The results of the debtor's omissions were undeniably dramatic. The Beverly was located in a low income area. It was remodeled to cater to transients who were required to pay on a daily basis. The debtor was unable to control the slovenly and destructive behavior of its clientele. The deterioration and destruction was attributed by the trial court to the debtor's inability to repair, and possibly his inability to screen and supervise tenants. These omissions were considered serious enough to be characterized as intentional.

Although deciding that the debtor's failure to repair was intentional, the bankruptcy court's conclusion was qualified. The court, in its oral opinion, ruled out fraud or looting on the part of the debtor, stating:

> I don't think that the income he [the debtor] was generating from it was sufficient to ... find any fraud on his part. I just think that he acted in such a manner that, again under that Ninth Circuit case, he had to have known from his own background, what the outcome of basically abandoning that property in that neighborhood would be. And he acted in such a way that that was, indeed, the outcome. Therefore the debt is nondischargeable.

Fraud and looting clearly come within the compass of intentional torts. Failure to make repairs or screen tenants does not. The California courts have recognized that waste may occur purely as a result of a property holder's financial circumstances.

In construing the anti-deficiency statutes, the California Supreme Court has drawn a distinction between two kinds of waste. The first kind may occur as the result of economic pressures, such as those created in the 1930's by the Depression.

> For example, a purchaser caught in such circumstances may be compelled in the normal course of events to forego the general maintenance and repair of the property in order to keep up his payments on the mortgage debt. If he eventually defaults and loses the property, to hold him subject to additional liability for waste would seem to run counter to the purpose of section 580b and to permit the purchase money lender to obtain a deficiency judgment.

*Cornelison*, 15 Cal.3d at 604, 125 Cal.Rptr. 557, 542 P.2d 981; *accord Hickman v. Mulder*, 58 Cal.App.3d 900, 908, 130 Cal. Rptr. 304 (1976).

The first kind of waste, caused by economic circumstances, is contrasted with "bad faith waste." Property holders guilty of bad faith waste "are reckless, intention-

**2.** "One who does not intentionally exercise dominion or control over a chattel is not liable for a conversion even though his act or omission is negligent." Restatement (Second) of Torts § 224 (1965).

al, and at times even malicious despoilers of property." *Cornelison,* 15 Cal.3d at 604, 125 Cal.Rptr. 557, 542 P.2d 981. The California courts have concluded that the anti-deficiency statutes should not protect those who commit bad faith waste.

The majority contends that the debtor demonstrated bad faith by prolonging his control over the property after default. The court below suggested that the debtor might sooner have recognized his inability to manage the property and given it up to the plaintiff. While in hindsight such action would have been provident, the desire of the debtor to stay with his investment is understandable. This is inconsistent with any conclusion that he abandoned the property or that he intentionally subjected the hotel to the depredations of its transient guests.

The court below suggested that once the debtor was in default, retention of possession in the face of his inability to keep pace with hotel guests' excessive wear and tear somehow equated with an intention that it happen. If there was a difference in the debtor's behavior or its consequence during the first three months of his tenure, while he was paying on the contract and the last three months, when he was in default, there is no proof in the record allocating damages to either period.

The majority suggests that the debtor's having given appellee checks on which he later stopped payment somehow related to an intention on the part of the debtor that the premises be destroyed. These facts, if they evidence anything, demonstrate the debtor's intention to retain the premises in order to salvage his investment.

The purpose of bankruptcy law is to protect honest albeit incompetent and unfortunate debtors from the consequences of bad business judgment. It is inappropriately harsh to transform improvidence, bungling and ineptitude into nondischargeability for an intentional tort.

I respectfully dissent.