[Civ. No. 23955.   First Dist., Div. Two.   Jan. 26, 1968.]

ALBERT MILTON HARDIE, JR., et al., Plaintiffs and Respondents, v. CHEW FISH YUEN, Defendant and Appellant.

Morris M. Grupp and G. H. Van Harvey for Defendant and Appellant.

Rawles, Nelson, Golden & Poulos, Rawles, Nelson, Golden, Poulos & Hinkle and John J. Golden for Plaintiffs and Respondents.

AGEE, J.—Defendant appeals from a judgment quieting plaintiffs' title to the "Clifford Crawford Ranch" in Mendocino County as against his leasehold interest therein. This parcel is only a portion of the property covered by the lease.

The lease to defendant was executed on December 4, 1957 and, through exercise of the right to extensions as provided in said lease, the term thereof expires on April 30, 1973.

The additional property covered by the lease adjoins the subject property and is referred to herein as the "Ivan Crawford Ranch." It is owned by Nellie M. Crawford and Ivan H. Crawford.

The plaintiffs, Albert Milton Hardie, Jr., and Bertha Romer Hardie, his wife, acquired title to the Clifford Crawford Ranch by grant deed executed on January 21, 1965 by *all* parties owning an interest therein and plaintiffs' ownership of said ranch since this date is not in dispute.

The ownership of this property, ever since February 27, 1951 has been vested in Clifford W. Crawford as to an undivided one-half interest and Wayne L. Crawford as to a *life estate* in the other one-half interest, with remainder in such interest in Wayne L. Crawford II, Joan Crawford, Susanne Crawford, and Earnest Crawford in equal shares. (The remaindermen *did not join in the lease.*)

Plaintiffs' quiet title action was filed on March 17, 1965 against defendant alone. Defendant's answer set up the lease. The sole objective of the suit was to have the court decree that

defendant's lease was invalid as to their property. The judgment quieting title as against defendant had this legal effect.

The crucial issue before us is whether Nellie M. Crawford and Ivan H. Crawford were indispensable parties in such action. They were lessors under the lease and had an interest therein. The issue is jurisdictional and may even be raised by an appellate court on its own motion. (*U-Tex Oil Co.* v. *Pauley,* 209 Cal.App.2d 88, 95 [25 Cal.Rptr. 790]; *Miracle Adhesives Corp.* v. *Peninsula Tile etc. Assn.,* 157 Cal.App.2d 591, 595 [321 P.2d 482].)

The lease contains the following recitals: "We, the parties of the first part . . . Wayne L. Crawford, Clifford W. Crawford, *Nellie M. Crawford* and *Ivan H. Crawford,* do hereby lease our *combined* properties . . . to Chew F. Yuen [defendant] . . . for the purpose of mining . . . ."

The lease granted to defendant "all mining rights to any and all mineral and metals on their properties." He was authorized to "prospect, explore, develop and mine," using mining methods of his own choice.

Paragraph 9 of the lease provides that "Mining procedures will first commence on the [Clifford Crawford Ranch] property . . . then continue on to the [Ivan Crawford Ranch] property . . . ."

Paragraph 2 provides that defendant was to "remunerate to the *parties* of the first part . . . five percent of the gross yield from *all mining on the properties* of the first part." (All italics added.)

The underlying reason for the joint lease of the two properties was that defendant's pre-lease investigation disclosed that the fault line wherein it was hoped to find a valuable vein of cinnabar ran through both properties and the heavy and expensive equipment that was needed to mine this called for an operation which included the *combined* properties. Otherwise, defendant would be stopped from following the vein when he reached the boundary line of the parcel which had not been worked.

The record indicates that if the potential ore body had been reduced by the elimination of one of the ranches the defendant would not have entered into the lease, since the venture would thereby have had less economic feasibility.

The trial court, in its written decision, extensively discussed the issue of waste and reached the following conclusion of law: "Clifford Wayne Crawford, the co-tenant as to an undivided one-half interest, and Wayne L. Crawford, the life

tenant as to the other undivided one-half interest, did not have authority to enter the lease referred to in finding number 1, by reason of the fact that the acts *contemplated* under said lease were acts of waste, insofar as the remaindermen, Wayne L. Crawford (grandson of the life tenant), Joan Crawford, Susanne Crawford, and Earnest Crawford, were concerned." (Italics added.)

The issue as to whether the lease provision allowing defendant "to prospect, explore, develop and mine" the leased property authorizes the commission of "waste," as that word is used in mining lease cases, was hotly disputed at trial.

Defendant stands in the shoes of life tenant-Wayne L. Crawford so far as the latter's interest in the subject property is concerned. Civil Code, section 818 provides: "The owner of a life estate may use the land in the same manner as the owner of a fee-simple, except that he must do no act to the injury of the inheritance."

Witkin states the rule as follows: "To constitute waste, there must be an injury to the inheritance (C.C. 818), substantially depreciating the market value of the property. (*Sallee* v. *Daneri* (1942) 49 C.A.2d 324, 121 P.2d 781.) Use or consumption which is actually beneficial to land, or which increases its value, is not actionable." (2 Witkin, Summary of California Law (1960) p. 1009.)

In the *Sallee* case, *supra,* a life tenant was held not to be liable for waste, where he cut and sold the timber on the property, because this actually increased the market value of the land by making woodland into arable soil.

It was the contention of defendant in the instant case that his work of exploration and mining would increase the market value of the subject property and would redound to the ultimate benefit of the remaindermen.

The trial court made no finding of fact that any waste had been committed but held, in the foregoing conclusion of law quoted above, that the lease on its face *contemplated* acts of waste.

We are not at this time directly concerned with or attempting to decide the issue of waste except to negate plaintiffs' contention that *as a matter of law* the lease must be invalidated by reason of the failure of the remaindermen to join therein and then, as plaintiffs contend, the outcome of the case would be the same whether Nellie M. Crawford and Ivan H. Crawford had or had not been joined as parties in the instant action.

### Failure to Join Indispensable Parties

Code of Civil Procedure, section 389 provides in relevant part that ''A person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be inequitably affected or jeopardized by a judgment rendered between the parties.''

█ Defendant pointed out at trial and again on appeal that Nellie M. Crawford and Ivan H. Crawford are indispensable parties in this action.

Although these parties do not own any interest in the subject property, they do have a right under the lease to share in any royalties that might become due as the result of mining operations by defendant on said property.

The discontinuance of defendant's operations on the subject property will also have a bearing upon his operations on the adjoining property covered by the lease and owned by Nellie M. Crawford and Ivan H. Crawford.

Thus, it appears clear that the interest of Nellie and Ivan in the instant action, in which the validity of the lease is the sole issue, is such that said interest ''would be inequitably affected or jeopardized by a judgment rendered between the parties.'' (§ 389.)

█ From the circumstances of this case, as disclosed by the record, we do not believe that the lease can or should be severed so as to be valid as to one parcel and invalid as to the other.

Civil Code, section 1431 provides in relevant part: '' [A] right created in favor of several persons, is *presumed to be joint,* and not several . . . . *This presumption, in the case of a right, can be overcome only by express words to the contrary.*'' (Italics added.)

The lease creates a right to royalties in the *four* joint lessors, i.e., the parties of the first part were to receive ''five percent of the gross yield from all mining on the properties of the first part.''[1]

---

[1]The only royalties paid were for the year 1960, totaling $128.97, and were allocated by defendant according to the ranch from which the ore was extracted. However, plaintiffs do not contend that this has any particular significance with respect to the interpretation of the lease. As stated in *Jameson* v. *Chanslor-Canfield Midway Oil Co.*, 176 Cal. 1, 7-8 [167 P. 369]: ''We perceive no force in the argument that the conduct of the parties subsequent to the execution of the lease gives evidence of their understanding that the right in question was several and

*There are no express words to the contrary.* (§ 1431.) Therefore, the lease provisions must be interpreted to confer a joint right to all royalties in all of the lessors. (Cf. *Jameson* v. *Chanslor-Canfield Midway Oil Co.,* 176 Cal. 1 [167 P. 369] ; *Metzler & Co.* v. *Stevenson,* 217 Cal. 236 [18 P.2d 330] ; *Petroleum Midway Co., Ltd.,* v. *Moynier,* 205 Cal. 733 [272 P. 740] ; *Jones* v. *Pier,* 124 Cal.App. 444 [12 P.2d 646].)

*Jameson, supra,* was a quiet title action brought by two of the three owners of a tract of land against the lessee of said tract under oil leases executed by the three owners. The opinion states : ''The two plaintiffs owned a three-fourths interest in the land and Strassburger owned a one-fourth interest. The judgment of the court purports to quiet the title of the plaintiffs to their three-fourths interest in the lands. It contains a provision declaring that Strassburger was and still is the owner of an undivided one-fourth interest as tenant in common with the plaintiffs and that said one-fourth interest of Strassburger still remains subject to the leases of the defendant which the court declared had been forfeited as between the two plaintiffs and defendant. The judgment also provides that the plaintiffs shall have a writ of possession for the three-fourths interest adjudged to belong to them as against the defendant.''

The Supreme Court upheld defendant's contention that all of the three lessors must join in the quiet title action, the objective of which was to forfeit defendant's lease, saying : ''The case comes clearly within the provisions of section 1431 of the Civil Code. . . . As applied to this case the section is to be read as follows : 'A right created in favor of several persons is presumed to be joint and not several. This presumption can be overcome only by express words to the contrary.' '' (Pp. 4-5.)

There being no such words, the court held : ''It is not necessary to resort to strict construction, however, to reach the conclusion that the forfeiture here provided for can be brought about only by the joint action of all of the lessors.'' (P. 6.) In other words, the absence of one of the lessors as a party prevented the court ''from rendering any effective judgment between the parties.'' (Code Civ. Proc., § 389.)

The court further justified its holding, by pointing out that

not joint. It may have happened frequently in the dealings between the parties that one of the lessors has acted for all, either by express authority or by acquiescence and consent. Such conduct has little significance in the interpretation of a contract.''

the fact that the lease covered the entire tract "was one of the inducing causes for the acceptance of the lease by the lessees." (P. 6.)

*Petroleum Midway, supra,* 205 Cal. 733, illustrates the application of the exception provided for by the final sentence of section 1431, pointing out that, in a written extension of the original lease, it was provided that: " 'Each well shall be drilled wholly on one lot, and the owner of that lot shall be the only participant in the royalty from such well.' " (P. 741.)

For the reasons stated above, we have concluded that the instant lease is not severable and cannot be canceled piecemeal, at least on the present record. We have further concluded as an independent ground of decision, that Nellie M. Crawford and Ivan H. Crawford are indispensable parties within the meaning of Code of Civil Procedure section 389, This necessitates a reversal of the judgment. (*Bowles* v. *Superior Court,* 44 Cal.2d 574 [283 P.2d 704] ; *Beuerbach* v. *Juno Oil Co.,* 42 Cal.2d 11 [265 P.2d 1].)

As stated in *Irwin* v. *City of Manhattan Beach,* 227 Cal. App.2d 634, 637 [38 Cal.Rptr. 875] : "The court is without authority to render a judgment which would materially affect the rights of absent, known, indispensable parties."

The judgment is reversed and the court is directed to take such further proceedings, including those provided for in section 389 of the Code of Civil Procedure, as may be proper.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied February 23, 1968.