Wilbur D. MAY, Plaintiff-Appellant,

v.

NEVADA IRRIGATION DISTRICT, an irrigation district organized and existing under the laws of California, Defendant-Appellee.

No. 77-1698.

United States Court of Appeals, Ninth Circuit.

July 17, 1979.

Nowland C. Hong, Parker, Milliken, Clark & O'Hara, Los Angeles, Cal., for plaintiff-appellant.

Paul R. Minasian, Minasian, Minasian, Minasian, Spruance & Baber, Oroville, Cal., for defendant-appellee.

Before WRIGHT and TANG, Circuit Judges, and PALMIERI, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

May brought this diversity action in 1968 seeking a declaration that the Nevada Irrigation District (NID) is contractually bound to provide him with irrigation water at an annual rate of six dollars per acre. The district court sitting without a jury found that the easement which had been granted in exchange for the right to water at that rate had terminated in 1949. In that year title to the easement vested in the United States, which had previously acquired title to the underlying estate. The court held for NID.

May appealed, and in 1971 the cause was remanded for consideration of California Civil Code § 1431. On remand, the district court affirmed its earlier decision.

## FACTS

May owns some 1,760 acres, across which runs a water canal known as the Tarr Ditch. The ditch, approximately 35 miles long, is located in Nevada and Yuba Counties, California. It was constructed by NID's predecessor in interest, the New Blue Point Mining Company, to supply water for placer mining.

In 1918, following litigation over the water rights,[1] Jacob Weissbein, as trustee for the mining company, had an agreement with 12 landowners to confirm a right of way for the ditch across their properties. In exchange for the right of way, he agreed to sell to the landowners

> water for irrigation purposes only during each irrigation season forever . . . at the rate of six (6) dollars per acre for each acre or fraction thereof irrigated or to be irrigated of the lands owned by them at the date hereof. . . .

In 1942 the United States gained title to the land formerly owned by Church, one of the original signatories. The area became part of Beale Air Force Base. In 1949 a judgment condemned the portion of the Tarr Ditch which crossed what had been the Church land. The government transferred the property to May in 1960 by quitclaim deed.

The district court found that the right of way was intended, at the time of the agreement, to be appurtenant to the lands it crossed. *See Stanislaus Water Co. v. Bachman*, 152 Cal. 716, 93 P. 858 (1908). This finding is not contested on appeal.

The court also found that the consideration conveyed and received by each landowner was separate and distinct from that conveyed and received by each of the other landowners. The court reasoned that, because May's right to low cost water was severable from the rights of other landowners, and because the consideration for that right was the easement across May's property, the water rights were extinguished along with the easement when the dominant and servient estates merged under government ownership.[2]

---

* Of the Southern District of New York.

1. *E. C. Horst Co. v. New Blue Point Mining Co.*, 177 Cal. 631, 171 P. 417 (1918).

2. The court relied upon the Restatement of Property § 497 (1944), which provides:

   An easement appurtenant is extinguished by unity of ownership of estates in the dominant and servient tenements to the extent to which the uses which could have been made prior to the unity by virtue of the ownership of the estate in the dominant tenement can be made after the unity by virtue of the ownership of the estate in the servient tenement.

## SECTION 1431

The central issue on appeal is whether or not the district court properly applied § 1431 of the California Civil Code in determining that May's right to irrigation water is severable from the rights of the other landowners. The section states:

An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several, . . . This presumption, in the case of a right, can be overcome only by express words to the contrary.

The district court held § 1431 applicable to the 1918 agreement. On appeal, NID argues that this section should not be applied unless the court first determines whether or not the parties intended to create "a right in favor of several persons." Although it admits that the rights of the landowners to water under the agreement are similar, NID points out that one landowner is not responsible for buying the water of another if the other refuses to pay for it. Consequently, it argues that the right to water is not common, and § 1431 does not apply.

██ The holding of the district court is more in accordance with the ordinary meaning of the words used in the statute. The purpose of the presumption in § 1431 is to help determine whether the parties intended a right to be joint or several. If it were necessary to determine that a right is a joint right before applying the section, the presumption would be of no use.

## EXPRESS LANGUAGE

Because § 1431 applies here, the agreement is presumed to create a joint right unless it contains express words to the contrary. The district court found such words in the statement that Weissbein would sell to the landowners "water for irrigation purposes only . . . for each acre or fraction thereof irrigated or to be irrigated of the lands owned by [the landowners] at the date hereof."

May contends that this language merely specifies the amount of water that each landowner was entitled to purchase and does not affect the nature of the rights created by the agreement. He argues that the wording is ambiguous and inadequate to qualify as express words to the contrary.

██ The intent of the parties at the time a contract is executed is a question of fact for the trial court. In a nonjury trial the court's findings of fact will not be disturbed unless found to be clearly erroneous. Fed.R.Civ.Proc. 52(a). The district court's interpretation of the language in the 1918 Agreement was not clearly erroneous.

██ The district court interpreted the language to mean that water could only be ordered for use on the land of the owner who ordered it. The court noted that no provision was made in the agreement allowing one landowner to order more water if another declined to order water for a given season. The landowners did not contract to order a fixed amount of water and divide it among themselves. Therefore the right to irrigation water cannot be said to be joint.

May argues that *Hardie v. Chew Fish Yuen*, 258 Cal.App.2d 301, 65 Cal.Rptr. 594 (1968), governs this case. In *Hardie*, the owners of two adjoining ranches leased mining rights to the defendant, who wished to follow a cinnabar vein through the two ranches. After the execution of the lease, one ranch was sold, and the new owners brought a quiet title action. The court held that the owners had a joint right to royalties from the cinnabar recovered, and that the lease was not severable.

It is true, as May points out, that, in the present case, Weissbein undoubtedly sought a right of way from each landowner. In *Hardie*, the court noted that the mining enterprise might not have been worth the expense without the participation of each ranch owner.

The lease in *Hardie*, however, included no language which conditioned the amount of consideration received by the landowners on the location of the cinnabar. There were no words to rebut the presumption that each landowner would share equally in the royalties regardless of where the find was

made. More importantly, the landowners not only shared the benefits of their contract, but were jointly liable for any breach.

■ The district court's interpretation of the language in the agreement is reasonable. Under the agreement water was to be allocated to each landowner on a per acre basis. It follows that the parties intended that each landowner would be dealt with individually. Moreover, as the district court observed, it seems highly unlikely that one landowner could be held responsible for payment if another failed to pay for his water.

We have examined the few cases which have applied § 1431. For the most part, they have applied the presumption and found a joint right. But in each case the contract language is dissimilar from that used here, and is of little precedential value. More importantly, in no case was there any language capable of being interpreted as expressly contrary to the presumption of a joint right. *Metzler & Co. of California v. Stevenson*, 217 Cal. 236, 18 P.2d 330 (1933); *Petroleum Midway Co. v. Moynier*, 205 Cal. 733, 272 P. 740 (1928); *Jameson v. Chanslor-Canfield Midway Oil Co.*, 176 Cal. 1, 167 P. 369 (1917); *Jones v. Pier*, 124 Cal.App. 444, 12 P.2d 646 (1932).[3]

### CONSIDERATION FOR THE WATER RIGHTS

■ Finally, May argued in the district court that the consideration given by the landowners in exchange for irrigation water at six dollars per acre was not the use of the easement each year, but merely the granting of the easement. Were this the case, the obligation to supply water would survive the extinguishment of the easement.

■ The district court resolved this question by analogy to the condemnation of leased premises. In California, if an entire leased parcel is condemned, the lease is

terminated and the lessee is relieved of his obligation for rent. Witkin, Summary of California Law, Volume 2, Section 257 (7th ed. 1960). The analogy is sound.

The judgment is affirmed.

The court said that, where several distinct sums are by contract payable to several identified persons, any of the parties might sue separately for his or her share.

---

**3.** In one case, however, the section was cited but the rights involved were found to be several. *Spangenberg v. Spangenberg*, 19 Cal.App. 439, 126 P. 379 (1912). Involved was an agreement by heirs for division of an inheritance.