**LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Laborers Vacation Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; and Laborers Training and Retraining Trust Fund for Northern California, Plaintiffs-Appellants,**

v.

**KAUFMAN & BROAD OF NORTHERN CALIFORNIA, INC., aka Kay Building Co.; Kay Building Co.; Does I–X, inclusive, Defendants-Appellees.**

No. 81–4466.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1982.

Decided June 1, 1983.

Robert M. Hirsch, Van Bourg, Allen, Weinberg & Rodger, San Francisco, Cal., for plaintiffs-appellants.

Robert W. Tollen, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees.

Before WALLACE, KENNEDY, and NELSON, Circuit Judges.

KENNEDY, Circuit Judge:

Kaufman & Broad of Northern California, Inc. ("the Company") is a general contractor and home builder. The Company is a member of the Northern California Home Builders Conference, and through that organization is a party to the 1977–1980 Laborers' Master Agreement ("the Agreement") between construction industry employers and the Northern California District Council of Laborers ("the Union").

The Agreement sets the terms and conditions for all "Laborers' work," defined by a detailed list of construction related tasks. The Union has jurisdiction over all jobs that constitute Laborers' work, and the Agreement contains a union security clause which requires all such work to be performed by union employees. The Agreement also continues four employee benefit .trust funds ("Trust Funds" or "Funds") established under prior agreements.[1] Section 28(a) of the

---

1. The trust funds were established pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1976 & Supp. V 1981) and section 302(c)(5) of the

Agreement requires signatory employers to contribute fixed amounts to each fund for every hour spent on work within the Union's jurisdiction.

In late 1980 the Fund trustees audited the Company to determine compliance with the Agreement's pension contribution provisions. The audit revealed the Company used nonunion labor for "callback work," and that no pension contributions were made for such labor. "Callback work" is work performed by unskilled crews on completed home sites. The crews correct minor deficiencies on new homes, clean the sidewalks, pick up lumber scraps, etc. The Company typically uses labor hired on an occasional basis for this work.

The trustees decided callback work was within the Union's jurisdiction and subject to the pension contribution provisions of section 28(a). They claimed $131,887.68 in unpaid pension contributions and liquidated damages from the Company, which in turn denied that callback work was within the Union's jurisdiction. The Funds brought this suit in state court to collect.

The case was removed to the federal district court on the basis of original federal jurisdiction under section 301 of the Labor

Management Relations Act (LMRA), 29 U.S.C. § 185 (1976). Once in federal court, the Company moved for summary judgment. It based its motion on two grounds. Primarily, it contended that the district court lacked jurisdiction over the action because the underlying dispute was one of union representation, and thus within the exclusive jurisdiction of the National Labor Relations Board under *Local No. 3–193 International Woodworkers of America v. Ketchikan Pulp Co.,* 611 F.2d 1295 (9th Cir. 1980). The Company also insisted it had never understood callback work to be covered by the Agreement, and submitted affidavits to that effect.

The Funds opposed the Company's jurisdictional argument on the ground that the parties had agreed to the bargaining unit definition contained in the Agreement, making the issue primarily one of contract interpretation and thus within the district court's § 301 jurisdiction. They also filed a cross-motion for summary judgment that callback work is covered by the Agreement.

The district court found no material facts were in dispute, and held that callback work was not within the Union's jurisdiction under the Agreement.[2] We note that

Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5) (1976 & Supp. V 1981).

2. The district court order provided:

Defendants have moved for summary judgment, the matter was fully briefed and argued and counsel have submitted further declarations and memoranda in support of and in opposition to the motion. The Court has considered all of the foregoing and finds that there are no material facts in dispute.

The collective bargaining agreement upon which plaintiffs base their claim appears to require the defendant employer to pay contributions into the Laborers' Health and Welfare Trust Fund on behalf of union and nonunion employees. However, the Court need not reach that question for in this case the employees on behalf of whom contributions are sought are not covered by the agreement. They are not merely non-union employees performing covered work. They are performing non-covered work and therefore are not within the purview of the health and welfare provisions or any other provisions of the Laborers' Master Agreement 1977–1980. The allegation that call-back workers have

never been treated as performing covered work is essentially uncontroverted.

The trust fund stands in no better position than the parties to the contract and cannot enforce provisions never agreed upon or intended by the parties. *Markt v. Ro-Mart, Inc.,* 471 F.Supp. 1292 (N.D.Cal.1979). The plaintiffs have no contract right to enforce. To allow them to recover contributions in this case would be tantamount to a recognition of the laborers' union as the collective bargaining representative of call-back workers, a matter that is within the jurisdiction of the National Labor Relations Board and over which this court has no jurisdiction. For the foregoing reasons,

IT IS HEREBY ORDERED that the defendants' motion for summary judgment is GRANTED. Judgment shall be entered accordingly.

It is apparent that the district court considered the motion for summary judgment as a pleading in the alternative for either dismissal for lack of jurisdiction based upon *Ketchikan* or summary judgment that callback work is not covered by the Agreement. The district court clearly adopted the latter alternative as the

the district court necessarily assumed jurisdiction over interpretation of the contract in granting summary judgment for the Company on the work coverage issue. We affirm the assumption of jurisdiction, but vacate the grant of summary judgment and remand the contract interpretation issue for determination at trial.

■ The primary jurisdiction of the National Labor Relations Board in particular areas of labor management relations law is well-established. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 242–44, 79 S.Ct. 773, 778–779, 3 L.Ed.2d 775 (1959). The threshold issue in the case before us is whether the primary jurisdiction rule requires dismissal of this suit, which has been brought under section 301 of the LMRA, 29 U.S.C. § 185 (1976). The district court's jurisdiction under section 301 to entertain suits upon a collective bargaining agreement generally survives an objection based on primary jurisdiction, and in such cases the district court and the Board have concurrent jurisdiction. *Smith v. Evening News Ass'n,* 371 U.S. 195, 196–97, 83 S.Ct. 267, 268–269, 9 L.Ed.2d 246 (1962); *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 300–01, 91 S.Ct. 1909, 1924–1925, 29 L.Ed.2d 473 (1971); *Northern California District Council of Hod Carriers v. Opinski,* 673 F.2d 1074, 1075 (9th Cir.1982). There are cases, however, where deference to the Board's expertise requires recognition of its primary jurisdiction notwithstanding that the suit is based on section 301. We so held in *Ketchikan Pulp, supra.* There we stated:

Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units.

*Ketchikan Pulp,* 611 F.2d at 1301.

■ The Company invokes the *Ketchikan* rule in this case, claiming that primary jur-

isdiction applies and that the section 301 suit must be dismissed. In aid of its argument, the Company contends that the instant suit raises questions of representation and determination of the appropriate bargaining unit, so that the primary jurisdiction rule of *Ketchikan* is applicable. We find it unnecessary to inquire whether the question raised here is of the same character as that in *Ketchikan. Cf. Cappa v. Wiseman,* 659 F.2d 957 (9th Cir.1981). This action was commenced by a trustee, who is not a party to the collective bargaining agreement, and who cannot apply to the Board for relief. In our view, this makes *Ketchikan* inapplicable.

At oral argument before us, all acknowledged that the Trust Funds could not have brought this case before the Board. As the Trust Funds are neither parties to the Agreement nor employees, they have no standing to petition the Board for unit clarification or for an accretion of callback workers. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 516 n. 11 (5th Cir.1982).

■ The Trust Funds assert that because they cannot proceed before the Board, the district court suit is necessary for the proper fulfillment of their fiduciary duties under the Trust Agreements and under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1976 & Supp. V 1981), and that they are entitled to proceed to trial on the merits of the case. We agree. There is authority for holding that the primary jurisdiction rationale is inapplicable where the injured party bringing the suit has no acceptable means to invoke the Board's jurisdiction and cannot induce its adversary to do so. *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 201–02, 98 S.Ct. 1745, 1759–1760, 56 L.Ed.2d 209

ground for its decision, and found the Agreement inapplicable to callback work.

The order below also made a cryptic statement to the effect that because callback work is not covered by the contract, any attempt to bring such work within the Union's jurisdiction is a pure representation issue, which must be

brought before the Board. While the district court's comment as to its lack of jurisdiction over any subsequent action to redefine the bargaining unit somewhat obscured the issues on appeal, it is dicta, and does not affect our disposition of the case.

(1978). In such circumstances, the action is ordinarily cognizable in an otherwise appropriate judicial forum.

In *Sears,* which arose in the context of a preemption challenge to a state court action, the Court noted that there might be additional circumstances requiring a finding of preemption despite the injured party's lack of access to Board adjudication. That, however, is not the case before us here. The question here is whether the federal judicial forum should be displaced by the Board's authority, and we think there is ample support for the view that Congress did not intend such a result in suits brought by trustees of a pension fund.

ERISA governs the establishment and administration of employee benefit trust funds. 29 U.S.C. § 1001 *et seq.* In enacting ERISA, Congress expressly recognized that the "continued well-being and security of millions of employees and their dependents are directly affected by these plans," and declared that the express policy of the Act is to protect "interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by . . . establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001 (1976 & Supp. V 1981). To that end, 29 U.S.C. § 1132(e)(1) (1976) confers jurisdiction upon federal district courts over actions by a trust fiduciary to enforce the terms of a plan or enjoin their violation.

■ We are persuaded by both the structure and purpose of ERISA that Congress would not impose upon the Funds' trustees a fiduciary duty to maintain the fiscal integrity of the trusts without providing them a forum in which to do so. 29 U.S.C. § 1104 (1976 & Supp. V 1981) sets forth the statutory fiduciary duty of pension plan trustees.[3] In defining the scope of that duty, the Third Circuit has held that employee benefit plan trustees have a fiduciary obligation to take action, although not necessarily formal legal action, against all employers who fail to contribute to the trust as required by the plan. *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 600 (3d Cir. 1981). We need not adopt that rule here. It suffices to note that pension plan trustees have a fiduciary duty to maintain the financial security of the trust, *Adams v. New Jersey Brewery Employees' Pension Trust Fund,* 670 F.2d 387, 397 (3d Cir.1982), and that at some point failure to attempt to collect pension contributions may result in a breach of the trustee's statutory fiduciary duty of care and diligence in administering the plan.

Pension plan trustees thus must have a forum in which to enforce trust obligations. Congress provided such a forum by giving the district courts jurisdiction over collective bargaining disputes under section 301 and benefit plan enforcement actions under 29 U.S.C. § 1132 (1976 & Supp. V 1981). This jurisdiction should not be displaced in favor of the NLRB under the primary jurisdiction doctrine in suits brought by pension fund trustees where the Board's jurisdiction cannot be invoked by the trustees and is not likely to be invoked by other interested parties.[4] The district court properly as-

---

**3.** 29 U.S.C. § 1104(a)(1) provides:
  Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and
    (A) for the exclusive purpose of:
      (i) providing benefits to participants and their beneficiaries; and
      (ii) defraying reasonable expenses of administering the plan;
    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims;

   .    .    .    .    .

**4.** In this case, the employer's obligation to make pension contributions is defined in the collective bargaining agreement and incorporated in the various pension and trust fund agreements by reference, thus giving rise to federal district court jurisdiction under section 301 as well as 29 U.S.C. § 1132(e)(1) (1976). That this case is presented to us as a section 301 suit rather than a § 1132(e)(1) suit, however, does not vitiate Congressional intent to

sumed jurisdiction over this suit under section 301.

The Funds argue on appeal that if the district court had jurisdiction to entertain this suit, it should have stayed its proceedings pending arbitration of the covered work issue pursuant to section 9 of the collective bargaining agreement. There is some question whether the dispute as characterized by the Trust Funds is arbitrable.[5] Even if it is, however, the Trust Funds have waived their right to compel arbitration in this case by their course of conduct in the district court below.

■ A party may waive his right to arbitrate by foregoing the arbitration process and seeking to settle collective bargaining disputes in district court. *Morales Rivera v. Sea Land of Puerto Rico, Inc.,* 418 F.2d 725, 726 (1st Cir.1969); *Reid Burton Construction, Inc. v. Carpenters District Council,* 614 F.2d 698, 702 (10th Cir.1980). It is conceivable of course that the Trust Funds originally brought this suit in state court on the theory that it was merely a collection action under section 28(a) of the collective bargaining agreement, and therefore not arbitrable. Even if that is true, however, they were promptly put on notice that the Company considered the dispute one of covered work. In its answer, the Company pleaded as its fourth affirmative defense that the Trust Funds had failed to exhaust the contractually provided arbitration process. In the memorandum of points and authorities and the affidavits supporting its motion for summary judgment, the Company also specifically alleged that callback work was not covered by the Agreement.

■ The Trust Funds chose to pursue their remedy in district court. In response to the Company's motion for summary judgment, the Trust Funds filed a cross-motion seeking summary adjudication of "whether 'warranty or call-back work' is covered by the applicable labor agreement." Both parties briefed the issues raised by the cross-motions, and argument was heard by the district court. Only after that hearing did the Funds claim that the covered work dispute was arbitrable. Even at that juncture, the Funds raised the arbitration issue only as a bar to the Company's motion for summary judgment. At no time did they request an order compelling arbitration, seek to stay the proceedings pending arbitration, or withdraw their motion for summary judgment on the work coverage issue.

The Trust Funds' actions below are inconsistent with a good faith desire to settle their dispute with the Company by the contractual arbitration process. We will not allow the Funds to maintain an action in district court and avoid arbitration for over seven months, all the while consuming the resources of both the district court and the appellees, only to have them resort to contractual arbitration procedures on the eve of disposition by the district court. As the First Circuit noted in *Morales Rivera,* "[p]laintiffs' suddenly discovered affection for arbitration came too late."[6] 418 F.2d

provide a federal judicial forum for the enforcement of trust obligations nor does it alter our conviction that the preemption doctrine does not apply in this case.

5. The court below made no finding as to the meaning of "jurisdictional dispute" in section 9 of the Agreement, nor did it determine whether this dispute is jurisdictional in the conventional labor law sense. We need not remand for a determination of those issues by the district court, however, as we find that the Funds waived their right to seek arbitration of any covered work issue by pursuing the matter in district court.

6. That the Funds are third party beneficiaries rather than parties to the collective bargaining agreement does not alter our view of the waiv-

er issue. As the Funds point out in their own brief, third party beneficiary trust funds, like the parties to a labor contract, may be required to arbitrate issues properly governed by the arbitration provisions of a collective bargaining agreement. *Central States, Southeast and Southwest Areas Pension Fund v. Howard Martin, Inc.,* 625 F.2d 171 (7th Cir.1980). Moreover, where the trust funds are the aggrieved party, they may be required to trigger the arbitration process by informing the union of an arbitrable dispute. *Id.* at 172. They thus stand in the same position with respect to arbitration as parties to the collective bargaining agreements, and are thus subject to the waiver doctrine.

at 726. *See Reid Burton,* 614 F.2d at 702–03.

Finally, we must consider whether the district court properly granted summary judgment on the record before it. We may affirm a grant of summary judgment only if it appears from the record, after viewing all the evidence in the light most favorable to the appellant, that there are no material facts in dispute and the appellee is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *United States v. Contra Costa County Water District,* 678 F.2d 90, 91 (9th Cir. 1982).

■ The principal issue in this lawsuit is whether callback work is covered by the Agreement. The district court found that it was not. The contract provisions here, however, do not unambiguously exclude callback work from the Union's jurisdiction.[7] Where a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact. *Gillespie v. Travelers Insurance Co.,* 486 F.2d 281, 283 (9th Cir.1973); *May v. Nevada Irrigation District,* 600 F.2d 1280, 1282 (9th Cir.1979). In determining that intent, the trier of fact may look to the circumstances surrounding the contract's execution, *Interpublic Group of Companies, Inc. v. On Mark Engineering Co.,* 381 F.2d 29, 32–33 (9th Cir.1967); *Peerless Casualty Co. v. Mountain States Mutual Casualty Co.,* 283 F.2d 268, 278 (9th Cir.1960), including the preceding negotiations. *California Pacific Bank v. Small Business Administration,* 557 F.2d 218, 222 (9th Cir.1977). It may also consider the parties' conduct subsequent to contract formation, *Cordingley*

*v. Allied Van Lines, Inc.,* 563 F.2d 960, 964 n. 9 (9th Cir.1977), and such conduct is to be given great weight. *Acheson v. Falstaff Brewing Corp.,* 523 F.2d 1327, 1330 (9th Cir.1975); *Riess v. Murchison,* 329 F.2d 635, 642 (9th Cir.1964), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1196, 16 L.Ed.2d 209 (1966).

■ The Company's affidavits, by detailing the parties' conduct subsequent to contract formation, sought to show intent to exclude callback work from the Union's jurisdiction. The Funds relied primarily upon affidavits from Union negotiators to show intent to include callback work. While neither set of affidavits directly contradicts the evidence set forth in the other, taken as a whole they suggest contrary inferences as to intent, which is a question for the trier of fact. *May v. Nevada Irrigation District,* 600 F.2d at 1282. Accordingly, the district court's finding that there was no material fact in dispute was error. We reverse on that point and remand for a trial on the issue of whether callback work is covered by the Agreement.

The district court properly assumed jurisdiction over interpretation of the collective bargaining agreement. The grant of summary judgment was improper, however, as there are issues of material fact in dispute. The judgment is vacated and the cause remanded for trial on the work coverage issue.

VACATED and REMANDED.

---

7. The Agreement includes within the definition of Laborers' work "all cleanup of debris, grounds, and buildings," and includes as a Laborers' work classification "All cleanup work of debris, grounds and buildings including, but not limited to street cleaners."

   Kaufman & Broad describes "callback work" as follows: "First, an individual home buyer may want materials removed or minor deficiencies corrected. This may occur either at the time the buyer accepts the home or at any time during the first year or so of occupancy. Second, the streets and sidewalks must be cleared of mud and debris prior to being inspected by the local municipality and accepted

for public dedication. During the course of the inspection and again one year later, the local municipality may request correction of deficiencies. We refer to all of the above work as 'call-back work.'"

   Clearly, the Agreement does not unambiguously exclude callback work from the definition of Laborers' work, and the precise meaning of the Agreement must be decided by the trier of fact. In considering the parties' intent with respect to callback work, the trier of fact is of course free to find that some portions of callback work come within the Union's jurisdiction while others are excluded.