In re U.S. FINANCIAL SECURITIES
LITIGATION.

SOCIETE GENERALE DE BANQUE, Rentinvest, North American Fund A and ITF Fund, Ltd., Plaintiffs-Appellants,

v.

TOUCHE ROSS & CO.,
Defendant-Appellee.

SOCIETE GENERALE DE BANQUE, Rentinvest, North American Fund A and ITF Fund, Ltd., Plaintiffs-Appellants,

v.

BROWN, WOOD, FULLER, CALDWELL & IVEY and Brown, Wood, Ivey, Mitchell & Petty, Defendants-Appellees.

Nos. 83–5813, 83–5959.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1983.

Decided March 29, 1984.

Edward C. Cerny, Lane & Mittendorf, New York City, for plaintiffs-appellants.

James W. Colbert, III, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN and TANG, Circuit Judges, and JAMESON,* District Judge.

* Honorable William J. Jameson, United States District Judge for the District of Montana, sit-

TANG, Circuit Judge:

Appellants challenge the district court's order requiring payment of part of a settlement fund to the defendants. Appellants contend that the district court incorrectly interpreted the settlement agreement's payback provision and should not have adopted the magistrate's recommendation that the defendants receive part of the fund. We affirm.

## FACTS

This case arises out of the settlement of three related class actions against U.S. Financial, now defunct, for securities fraud. The class consists of debenture holders who purchased the securities between April 8, 1970 and July 23, 1973.

Negotiations for settlement of the actions were ordered by the district court judge and referred to a magistrate in 1979. The primary problems in the negotiations involved determination of the size of the plaintiff class and the corresponding size of the settlement fund. The defendants expressed concern that the size of the settlement fund might provide a windfall to the filing plaintiffs in the event prospective plaintiffs with large claims failed to file. In addition, the defendants were concerned with the potential liability from future suits filed by claimants who did not join in the settlement class. During the negotiations, several proposals were advanced unsuccessfully in response to these concerns, including a reversion provision for unclaimed funds and an indemnification provision as protection against future suits filed by non-class plaintiffs.

In May, 1980, plaintiffs proposed a payback provision for claims not filed by holders of $200,000 or more of the debentures. The size of the claims was to be gauged according to the size of claims filed by such holders in bankruptcy proceedings. Defendants obtained a list of $200,000 holders from Citibank, the indenture trustee of the debentures. After plaintiffs deleted one claimant on the list, whose claim was ap-

ting by designation.

parently below $200,000, the list was incorporated into the resulting settlement agreement as Exhibit I.

The settlement agreement was entered on June 8, 1981, and the fund was set at $2.6 million. Paragraph 8 of the agreement became the payback provision. It provided for pro rata payment of the fund to plaintiffs

> provided, however, that in the event a claim is not timely asserted by, or in behalf of Debentures in which a beneficial interest is held by, any of the persons or organizations listed in Exhibit I hereto, or by any other person or organization which the Settling Defendants can establish is a member of the Class and is entitled as such to file a claim with regard to Debentures with a face amount of $200,000 or more, or in the event any such claim is asserted but is disallowed in its entirety by the Court for failure to include a Consent Form pursuant to Section 9(a) of this Agreement or for any other reason (other than a finding that such claim is not held by the claimant), the pro rata portion of the Settlement Fund that would have been paid to such person or organization if it had timely asserted a valid claim shall be paid directly to the Settling Defendants at the same time it would have been paid to such person or organization.

Six of the ten claimants listed on Exhibit I either filed no claims or filed claims below the amounts listed on the Exhibit I schedule. These claimants were Credit Suisse, Merrill Lynch, Sirak Baloyan, Union Bank of Switzerland, Finagest and Societe Generale de Banque.

As no distribution to claimants other than the named plaintiffs had occurred by August, 1982, the district court ordered the parties to appear and explain the delay. At that time, the dispute arose regarding the interpretation of Paragraph 8 and the matter was referred to the same magistrate who had participated in the settlement negotiations. He recommended to the District Court that payback be made to the defendants in the amount of unsubmitted claims according to Paragraph 8.

Plaintiffs moved to modify the magistrate's order regarding the defendants' entitlement to part of the settlement fund. On March 14, 1983, a hearing on the motion was held before the district court judge after which he confirmed the preliminary order adopting the magistrate's recommendation and ordered payback to the defendants. The plaintiffs appeal the order.

DISCUSSION

Initially, the appellants claim that the district court failed to provide factual findings with sufficient precision to meet the requirements of Fed.R.Civ.P. 52(a). They argue that this oversight leaves the appellate court with an inadequate basis to review the trial court and justifies vacating the order of the district court.

█ When a trial court's findings of fact do not support the judgment, the appellate court may vacate and remand for further findings. *Richmond Elks Hall Assn. v. Richmond*, 609 F.2d 383, 385 (9th Cir. 1979). However, "[a]n appellate court may affirm on the basis of any evidence in the record that supports the trial court's judgment. The failure to make an express finding of fact by the district court 'does not require remand if a complete understanding of the issues may be had without the aid of separate findings.'" *South-Western Publ. Co. v. Simons*, 651 F.2d 653, 656 n. 2 (9th Cir.1981) (quoting *Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975)).

█ Here, the district court made it clear that it accepted the defendants' interpretation of Paragraph 8 of the settlement agreement based on affidavits, oral argument regarding extrinsic evidence, and the recommendation of the magistrate who had been involved in the settlement negotiations. The basis for the court's decision provides a sufficient understanding of the issues without a remand for further findings. In addition, the district judge's oral decision at the conclusion of the hearing held on March 14, 1983, clearly sets out the

court's understanding of the settlement negotiations relevant to the adoption of Paragraph 8 as part of the settlement agreement.

We conclude that a remand pursuant to Rule 52(a) is unnecessary.

The primary issue on appeal is the appellants' contention that the district court incorrectly interpreted Paragraph 8 of the settlement agreement when it concluded that the defendants could participate in the distribution of the settlement fund.

First, the appellants argue that the language and intent of Paragraph 8 preclude the return to the defendants of any part of the settlement fund representing claims not filed by prospective plaintiffs but instead submitted in their behalf by other plaintiffs. Pointing to the language of Paragraph 8 stating that defendants cannot share in the fund if a claim is asserted by an Exhibit I holder or in behalf of an Exhibit I holder, the appellants argue that defendants cannot recover *any* portion of the Finagest or Merrill Lynch claims because parts of both claims were submitted in their behalf by other plaintiffs. The defendants counter by arguing that the appellants' interpretation defeats the purpose of Paragraph 8 because such an interpretation would leave defendants exposed to a double liability from the non-filing holders who would not sign a release for the amount of their outstanding claims.

Second, appellants contend that the defendants are not entitled to a payback for the difference between the amount of claims listed by Exhibit I plaintiffs and the amount of claims such plaintiffs actually filed. Paragraph 8, the appellants argue, provides that defendants cannot recover a payback arising from a specific plaintiff if that plaintiff files any claim in any amount. Thus, the Exhibit I plaintiffs (Sirak Baloyan, Societe Generale de Banque) who filed claims in amounts below the amounts listed on the Exhibit I schedule effectively foreclosed the defendants' chances of receiving a payback for the shortfall because their partial filings were sufficient to extinguish any payback claims arising from their Exhibit I holdings. Appellants claim that a letter from their counsel to the defendants' counsel prior to the adoption of the settlement agreement supports this interpretation. The defendants counter by arguing that the letter was not intended to apply to these plaintiffs whom the defendants assumed would file the precise amount of the claims listed on the Exhibit I schedule.

Third, appellants contend that the defendants are not entitled to a payback for the unfiled claim of United Bank of Switzerland (UBS) because Paragraph 8 only allowed paybacks if a *valid* claim was not filed by an Exhibit I entity. Because United Bank of Switzerland never had a valid claim (it purchased debentures outside the class period), its failure to file a claim does not create a right to payback in favor of the defendants. Defendants counter by arguing that the size of the settlement fund was determined by reference to the size of claims listed on the Exhibit I schedule. Because United Bank of Switzerland listed a large claim on the schedule, its failure to file justifies the payback.

The district court determined that the defendants were entitled to paybacks from the fund in an amount equal to the shortfall between the scheduled claims and the claims actually filed. The trial court determined that the conditions for payback under Paragraph 8 had been met and based its decision on extrinsic evidence, written representations of counsel, the recommendation of the magistrate to whom the court had previously referred the matter, and oral representations made to the court during argument.

The heart of this dispute involves the standard of review. The appellants contend that this court should review the district court's interpretation of Paragraph 8 of the settlement agreement as an issue of law. The defendants argue that the district court's interpretation should be upheld unless clearly erroneous.

██ When an appellate court restricts its review of the trial court's interpretation of a contract to an analysis of the language

used in the contract, the issue of interpretation is a matter of law and freely reviewable. *Taylor-Edwards Warehouse v. Burlington Northern*, 715 F.2d 1330, 1333 (9th Cir.1983). Thus, the determination of whether contract language is ambiguous is a matter of law. *United States v. Contra Costa County Water District*, 678 F.2d 90, 91 (9th Cir.1982). When the interpretation includes a review of factual circumstances surrounding the contract, the principles of contract interpretation applied to those facts present issues of law which this court can freely review. *Libby, McNeill, and Libby v. City National Bank*, 592 F.2d 504, 512 (9th Cir.1978). When the inquiry extends beyond the words of the contract and focuses on related facts, however, the trial court's consideration of extrinsic evidence is entitled to great deference and its interpretation of the contract will not be reversed unless it is clearly erroneous. *Culinary & Service Emp. Union v. Hawaii Emp. Benefit Administration*, 688 F.2d 1228, 1230 (9th Cir.1982); *Paragon Resources v. National Fuel Gas Distribution*, 695 F.2d 991, 995 (5th Cir.1983); *Washington Metropolitan Area Transit Authority v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980).[1] Because a trial court's review of extrinsic evidence is essentially an inquiry into the intent of the contracting parties, its conclusions based on such evidence must be accorded great weight. "The intent of the parties at the time a contract is executed is a question of fact for the trial court. In a nonjury trial, the court's findings of fact will not be disturbed unless found to be clearly erroneous." *May v. Nevada Irrigation District*, 600 F.2d 1280, 1282 (9th Cir.1979).

■ The district court evaluated the oral and written arguments of the parties and included in its interpretive analysis the recommendations and findings of the magistrate who found that the defendants had agreed to increase the size of the settlement fund on the condition that all of the potential claims be filed. The findings of the magistrate are particularly important because he had been involved in the settlement negotiations leading to the adoption of Paragraph 8 of the settlement agreement. He concluded that Paragraph 8 was adopted to protect the defendants in the event claims were not submitted. The district court's interpretation of the settlement agreement was not clearly erroneous.

AFFIRMED.

---

1. In *Martin v. United States*, 649 F.2d 701, 703 (9th Cir.1981), this court stated that a district court's interpretation of "the meaning of words of the contract in light of the surrounding circumstances ... presents a question of law freely reviewable by this court." While this language suggests some inconsistency with this court's more recent pronouncement of the governing standard in *Culinary & Service Employees Union*, we adhere to the clear teaching of that case and will not reverse a district court's interpretation of a contract based on extrinsic evidence unless it is clearly erroneous.