[Civ. No. 6523.   Third Dist.   Jan. 27, 1942.]

HARVEY SALLEE et al., Appellants, v. JOHN J. DANERI, as Administrator, etc., et al., Respondents.

Frank L. Murphy for Appellant.

Allen L. Martin, Leon French and Snyder & Snyder for Respondents.

THOMPSON, Acting P. J.—This is a suit to recover damages for alleged injury to land which is now in the possession of appellants who are remaindermen by virtue of the will and the decree of distribution in the matter of the Estate of Clara N. Wetmore, deceased.

The appellants allege two causes of action. The first cause is against the administrator of the Estate of Merle Wetmore, deceased. Mr. Wetmore was the husband of Clara N. Wetmore. He went into possession of the premises involved in this suit in March, 1919, as a life tenant, remaining thereon until his death, which occurred February 19, 1939. It is alleged that Merle Wetmore committed acts constituting waste and injury to the inheritance by failing to cultivate and maintain the land and premises in accordance with good husbandry in Amador County. Appellants alleged that Mr. Wetmore permitted the farm to grow to weeds; that he cut down, removed and sold trees; that he failed to make necessary and reasonable repairs to the buildings, so that they became dilapidated; that he permitted strangers to come upon the property and to cut down the trees and sell the wood.

The second cause of action alleged that Joseph R. Jones was permitted to wrongfully enter upon the premises without appellants' consent and to cut down trees and convert the timber to his own use.

The portion of the complaint which is based on a demand for treble damages was stricken out and a claim only for ordinary damages remains.

A cross-complaint was filed by respondent Jones which alleges conversion by appellants of a quantity of cut wood belonging to him and situated upon the premises at the time of possession thereof by appellants. By stipulation of counsel, these damages were fixed at $1,200.

The trial court entered judgment against the appellants and in favor of respondents, John J. Daneri and cross-complainant Joseph R. Jones. It was ordered that respondent Daneri have judgment against appellants for his costs of suit and that respondent Jones recover upon his cross-complaint against appellants $1,200 damages, together with his costs of suit.

The findings of the court determine that Merle Wetmore, the life tenant, did not commit any act upon the land resulting in injury to the inheritance or causing a depreciation of the market value of such property; that Merle Wetmore did not neglect to properly cultivate the land nor did he permit the farm property to grow to weeds or allow the pasture land to be overgrown with brush, or unlawfully permit the cutting and sale of trees. On the contrary the court found that Mr. Wetmore followed the usage and custom of the district in keeping with good husbandry, in his cultivation and care of the property.

It is further found that Joseph R. Jones entered upon the premises of appellants by permission of Merle Wetmore and that with his consent he cut down a number of growing trees situated on the land; that the cutting of these trees was not wrongfully or wantonly committed and did not constitute acts of waste on the part of Jones, but on the contrary that such cutting of trees resulted in the improvement of the property, and was consistent with the usage and custom of the district in accordance with good husbandry, and actually resulted in an increase in the value of the land. It is found that on March 1, 1939, at which time appellants were in possession of the premises, Jones was the owner of a quantity

of cut wood of the value of $1,200, which was stored on the premises with consent of Merle Wetmore. The court further found that on March 1, 1939, while appellants were in possession and control of the cut wood they converted the same to their own use, to the damage of cross-complainant Jones in the sum of $1,200.

This appeal from the judgment in favor of respondents raises the question as to whether Merle Wetmore, as the life tenant of the property, committed acts which were detrimental to the inheritance within the meaning of section 818 of the Civil Code, and therefore compensable in damages.

A life tenant, under the provisions of section 818 of the Civil Code, may use the land in the "same manner" that the owner of a fee simple may use it, provided that he does not thereby injure the inheritance. The provisions of that section read as follows:

"The owner of a life estate may use the land in the same manner as the owner of a fee-simple, except that he must do no act to the injury of the inheritance."

The plain meaning of the foregoing language indicates that the life tenant possesses a somewhat free hand in the manner in which he uses the land, and his right of enjoyment is limited only by such action as results in injury to the inheritance. Injury to the inheritance, which under the common law would be termed "waste" can only be proved, with the possible exception of a few instances, by evidence of acts which injuriously affect the market value of the property. The owner of an estate in reversion may not subject a life tenant to damages for every act which does not meet with the approval of the reversioner. Section 818 of the Civil Code requires that there be an injury to the "inheritance." As indicated, the question as to whether the tenant has committed acts of waste or injury to the inheritance is determined by proof only of conduct which has resulted in substantial depreciation of the market value of the land. (*Richards* v. *Silveria*, 97 Cal. App. 166 [275 Pac. 478].) The burden of proving depreciation in market value of the land, as a result of the alleged wrongful acts of waste rests upon the remainderman, who must establish that fact by satisfactory evidence, even though a life tenant may not use what might appear to be the best of care in the cultivation and care of the property.

We are of the opinion that, although Merle Wetmore,

the life tenant, may have failed to maintain the buildings in first-class repair, there is substantial evidence in support of the finding that the cutting of timber had the effect of improving the land rather than depreciating its value, and that appellants have therefore failed to prove that any such act on his part resulted in decreasing the market value of the inheritance.

Evidence bearing upon the market value of appellants' property was introduced by the testimony of George A. Kirkwood, the State Inheritance Tax Appraiser for Amador County, and by the testimony of Thomas W. Burke, a rancher, who owned considerable property in Amador County.

Mr. Kirkwood testified that he appraised this farm land in 1930, as a part of the *Estate of Eleanor Easton,* deceased. He said that the land was worth in 1939, which is the time involved in this suit, the same value that it was when he first appraised it in 1930. This value he fixed at $25 an acre for the open farm land and $10 an acre for the wooded land. He stated that, in his opinion, the cutting and removing of the timber and the clearing of the land increased its market value. The testimony of Mr. Kirkwood is in part as follows:

"Q. You appraised that same land in 1930, in the estate of Eleanor Easton? A. I did, yes sir. Q. At that time what did you fix as the market value of the different classes of land there? A. As near as I remember about the same as I did now. Q. Twenty-five dollars for open farm land and ten dollars for what we generally speak of as wooded land? A. Yes. Q. Mr. Kirkwood, have you observed that some wood has been cut off of that land? A. Yes, I noticed those. Q. Would that, the cutting and removing of that wood and clearing of that land decrease the market value of the land or would it increase the market value of the land? A. I would say it increased it."

Mr. Burke, who stated he was familiar with land values in the farming district, testified as follows:

"Q. What effect did the cutting of that wood off on that land, if any, did it depress the value or increase it? A. No, it increased the value of it in my estimation."

On cross-examination Mr. Burke testified that "Land without wood is more valuable, has more value in my estimation" in spite of the fact that such wood was worth $2 a tier on the ground.

We are aware of the fact that respondents' evidence bearing upon the relative market value of the premises in question, as evaluated in 1919, at which time Merle Wetmore became the life tenant, as compared with the market value in 1939, is far from conclusive. The appraisals made by Mr. Kirkwood were not for the purpose of assessing taxes and apparently were not based upon thorough investigation. The testimony given by Mr. Burke is not entirely satisfactory since he admitted that he had not dealt in sales of farm land for a number of years, and his appraisal of $20 per acre for ranch land in that vicinity was at variance with the appraisals upon such land which were made by Mr. Kirkwood. However, the opinions and conclusions of Mr. Gordon and Mr. Barsotti, two witnesses who testified for appellants, is also subject to the same criticism. Mr. Gordon made his appraisal for loan purposes only. The evidence offered by appellants, bearing upon the market value of this farm land, had the mere effect of creating a conflict in this respect. The conflict was resolved in favor of respondents, and we are bound by the conclusion of the trial court in that regard. We cannot assume that the deteriorated condition of the buildings on the premises necessarily depreciated the market value of the property, where substantial testimony was introduced indicating that the cutting of timber and the clearing of the land resulted in an increase of that market value. The evidence is also far from convincing regarding the condition of the buildings at the time Merle Wetmore went into possession of the property as life tenant. It is true that there is some evidence indicating that the land was not properly cleared after the cutting of timber thereon, but there were also a number of witnesses who testified to the clearing of the land. The evidence in that respect was also conflicting. There appears to be substantial evidence to support the findings that Merle Wetmore in accordance with good husbandry followed the usage and custom in his cultivation and care of the land and property employed by farmers in that vicinity.

It follows that since we must assume Merle Wetmore, the life tenant, committed no act detrimental to the inheritance, but on the contrary, that the property and the inheritance benefited by the cutting of timber and the clearing of the land, the sale of this timber by Merle Wetmore was not a wrongful act subjecting him to damages, and the contract

between the respondent Jones and Merle Wetmore was therefore valid and enforcible.

Although we still follow the rule of the common law as applied in England in regard to "waste" as affecting the "inheritance," the strictness of the enforcement of that rule is not applicable in this country because of the difference in the conditions which exist, especially with respect to the cutting of timber. The cutting of timber in this country has in many instances the effect of improving the inheritance, by converting woodland into arable soil. (21 A. L. R. 1015, sec. VIII.)

It follows from our conclusions that Merle Wetmore did have the right to sell timber to respondent Jones, and that Jones was rightfully upon the property for the purpose of cutting such timber. This being true, Jones had the right to store the cut timber upon the premises, and the appellants were not within their rights in taking possession of this personal property and converting the same to their own use. The respondent Jones was entitled to recover damages upon his cross-complaint for the value of the converted wood.

There is substantial evidence to support the findings of the trial court. The appellants have failed to prove an injury to the inheritance within the meaning of section 818 of the Civil Code.

Because of our foregoing conclusions, we deem it unnecessary to answer other issues raised on this appeal.

The judgment is affirmed.

Tuttle, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 27, 1942. Shenk, J., Houser, J., and Carter, J., voted for a hearing.