[No. E008042. Fourth Dist., Div. Two. Feb. 28, 1992.]

DIETERICH INTERNATIONAL TRUCK SALES, INC., et al., Plaintiffs and Respondents, v.
J. S. & J. SERVICES, INC., et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*This opinion is certified for publication with the exception of part I of the Discussion.
†Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

**COUNSEL**

Reid & Hellyer, Alexandra S. Ward, Michael A. Markel, Blumenthal & Milliken and E. Martin Blumenthal for Defendants and Appellants.

Gresham, Varner, Savage, Nolan & Tilden and Thomas N. Jacobson for Plaintiffs and Respondents.

## OPINION

**McDANIEL, J.\***—In an action to quiet title to an easement for access, the trial court ruled that plaintiff had acquired a prescriptive easement across a portion of defendants' adjoining property, more particularly, a portion sufficient for trucks to enter and park in plaintiff's service bays. The tenant defendant and the landlord defendant both appealed contending there was insufficient evidence to support the finding that plaintiff's use of that portion of defendants' property noted was hostile, adverse and under claim of right. Additionally, the landlord defendant contends the trial court erred as a matter of law in holding that a prescriptive easement can be obtained against his reversionary interest in the property. We agree with the latter contention, and so the judgment shall be affirmed as to the tenant defendant and reversed as to the landlord defendant.

### FACTUAL BACKGROUND AND PROCEDURAL SYNOPSIS

This case presents a dispute between the owner and his tenant on one hand, and the owner on the other hand, of two neighboring, industrial lots, lying on the south side of East Steel Road in Colton, California. *2200 East Steel Road* is vested of record in J. E. Dieterich, who owns Dieterich International Truck Sales, Inc. (Hereinafter, both Dieterich and Dieterich International Truck Sales, Inc. will be referred to as plaintiff.) *2300 East Steel Road* adjoins plaintiff's property on the east. This lot is vested of record in Don Brown, and was leased to J. S. & J. Services, Inc., doing business as Terminal Station, Inc. The leasehold term is for 49 years and will not expire until 2005. Philip Kelber is president of J. S. & J. Services, Inc., and participates directly in the operation of Terminal Station, Inc. (Hereinafter, J. S. & J. Services, Inc. will be referred to as Terminal Station. Terminal Station and Brown will be referred to as defendants unless otherwise noted.)

Plaintiff operates a truck sales and repair operation, which services large rigs, tractor-trailers, bobtails, vans, and school buses. Terminal Station is a truck stop, coffee shop, general store/commissary and fueling station, which sells fuel to both trucks and automobiles.

Plaintiff's building contains a truck salesroom, offices, and parts and service departments. It lies 100 feet south of East Steel Road and 50 feet

---

\*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

west of the common boundary line shared with the Terminal Station property. The truck-service area and service bays face east, toward defendants' property, with the entrance to the bays lying 50 feet west of the property line above noted. While both plaintiff's and defendants' lots have access to East Steel Road, defendants' access runs along almost the entire frontage of defendants' lot, whereas plaintiff's lies on the western side of its building (Steel Road jogs to the southwest at this point) from which large trucks cannot gain entry to the eastern side of the building. Neither property has roadway access on the south. The result of all this is that plaintiff's truck-service department on the east side of plaintiff's building is unreachable from East Steel Road without crossing defendants' property.

Since plaintiff began operations at 2200 East Steel Road in 1967, he has used an approximately 50-foot wide stretch of the Terminal Station property extending from East Steel Road south to plaintiff's service bays to enable his customers' trucks to gain access to those bays. This is the area over which plaintiff has asserted an easement by prescription. For 22 years, plaintiff has employed this strip of defendants' property as primary access to his property for both customers and for delivery of parts, to maneuver trucks in and out of the service bays, as a "decking area" and as a staging area where repair orders are written up and where customers can park while waiting to enter the service bays. The interior of the service bays is of sufficient length to accommodate a truck, but not long enough to house a truck with a trailer. Trucks which are longer than 50 feet, when parked in the service bays, or when waiting to enter the bays, extend easterly onto the Terminal Station property.

Further, plaintiff testified in his deposition that the 50 feet between plaintiff's service bays and the property line provides insufficient space for tractors and large trucks to turn into the service bays. "It takes an area greater than 50 feet with a swing radius to manoeuver a 35-foot vehicle. . . ." A trailer of maximum length would need 100 feet to back out of the service bays. "In most situations because of the location . . . and the size of the trucks it would be difficult, if not impossible, to access the service bays" from any other direction but from the east.

In the approximately 100 feet between the northern face of plaintiff's building and East Steel Road to the north, plaintiff maintains a truck display, parks trucks, and receives delivery of parts at the shipping and receiving department. Access to the 100-foot strip of land on the north side of plaintiff's property is also gained through the same entry point onto defendants' property. Virtually no other access is feasible.

Before the lawsuit, plaintiff and Kelber, Terminal Station's president, had a "good[-]neighbor" relationship. The truck stop and plaintiff's repair facility benefited and complemented each other. Terminal Station sold fuel to some of the same customers that plaintiff serviced. Further, the parties had a business arrangement in which, when a customer who came to plaintiff's garage for repairs did not have established credit, Terminal Station would run the credit through its books for plaintiff and take a percentage. In the last four or five years, this occurred only once or twice.

The evidence adduced at trial included the following. Since 1967, plaintiff's dealership has used the area to the east of the service bays as above described on a continuous and uninterrupted basis. Defendants' customers also use the easement area to gain access to defendants' fuel pumps, and Kelber estimated that over 1,000 trucks enter and exit his property each day. Plaintiff stated that he was able to distinguish between his customers' trucks and vehicles and those patronizing Terminal Station. Plaintiff has been aware of the boundary line between his and defendants' properties since his occupancy of his facility because, after moving onto the property, plaintiff added asphalt and a cement apron to the east of the service bays.

Plaintiff has a practice, in effect since 1967, of restricting the use of the area just east of the service bays to vehicles requiring service. Consequently, plaintiff has had to ask people, including Terminal Station's customers, to move trucks not awaiting service from that area. Arthur J. Haywood, the parts manager and later the service manager for plaintiff, testified that when trucks were parked so as to block the service bays, he would ask them to move. Haywood himself would not permit trucks which were not seeking service to park in the staging area even though it was defendants' property.

Sometime around 1985, Kelber told plaintiff that Terminal Station was installing fenceposts on defendants' side of the property line, but he would not extend the line of posts so as to block plaintiff's service bays and he "recognized that it could never be done through [plaintiff's] property." Plaintiff understood this as a recognition on defendants' part of plaintiff's right to the now-disputed easement area. In the 22 years that the two businesses have been operating next door to each other, plaintiff has felt confident that he had gained a prescriptive right to access to his service bays over the Terminal Station property.

Plaintiff testified that, until August of 1989, he and Kelber never discussed the issue of access to the service bays or location of the property line.

Plaintiff never informed anyone at Terminal Station that he was making adverse or hostile claim to the easement area or that he planned to gain prescriptive rights in defendants' property. Otherwise plaintiff never asked for permission or discussed with either of the defendants his right to use the easement area. Plaintiff testified that his use of the easement area was not perceived as arising out of any mutual benefit between plaintiff and defendants. Rather, plaintiff "used that area for [its] customers and to obtain access to [its] facility." In the words of plaintiff's service manager Haywood, "We just did it."

There has never been any posted sign or written document giving permission to plaintiff to use the easement area. Plaintiff testified that defendants never gave him oral permission to use the property. In contrast, Kelber testified that he gave plaintiff's predecessor permission to park trucks on the Terminal Station property. Further, Kelber testified that when plaintiff first took over the property at 2200 East Steel Road, Kelber told him that "he was welcome to continue to park his customers' vehicles on the lot. . . ."

On about eight or ten occasions when a truck belonging to a customer of plaintiff extended eastward beyond the easement area so that it was blocking defendants' fuel islands, defendant Terminal Station would ask plaintiff to move the truck. "When it was possible," plaintiff would move the offending truck, but only to another part of the easement. Periodically, it was impossible because the offending truck was disabled and immobile, or the truck's driver could not be located. Plaintiff never understood the request to move trucks as an application to remove them altogether from the Terminal Station property.

There was evidence that Kelber retopped the area in question once every five years and has made all of the required repairs to the easement area.

Plaintiff never offered to purchase the property over which he claims an easement because he did not know who the fee owner was. Plaintiff does not recall ever meeting the fee owner of the Terminal Station property, and, at the start of trial, all parties stipulated that plaintiff and defendant Brown (the fee owner) have never "communicated with" each other.

In 1988, the San Bernardino County Department of Health Services directed defendants to remove and replace their leaking underground fuel-storage tanks. Kelber and plaintiff had discussed on a few occasions Kelber's options for locating the new fuel tanks. The environmental engineers, hired

by Terminal Station to assist it in finding a feasible, legal location for the new tanks, recommended that they be sunk 10 feet east of the property line in front of some of plaintiff's service bays, squarely within the easement claimed by plaintiff. Installation required the erection of barriers and in preparation for installing the new tanks there, in August, 1989, Terminal Station began installing four-foot posts. This blocked plaintiff's access to his service bays. Upon learning of the chosen location for the new underground tanks, plaintiff filed a complaint for injunctive and declaratory relief and to quiet title to the easement against both defendant Terminal Station and defendant Brown. Kelber testified at trial on behalf of Terminal Station that this suit was the first indication of plaintiff's asserted prescriptive right.

Early on in the litigation, Brown, landlord and fee owner of the property in question, moved for judgment on the pleadings on the ground, because Brown had leased the property until 2005 to Terminal Station and thus had no present interest in the property, and because of Civil Code section 741, that his reversionary interest could not be the subject of a prescriptive easement.

This action was tried to the court over two days. After trial, the court requested that the parties submit letter briefs containing authorities on Brown's contention that a landlord cannot properly be the subject of a prescriptive easement.[1] Thereafter, the court, in an lengthy statement of decision, ruled that plaintiff had acquired an easement by prescription against both defendants, smaller, however, in scope than what plaintiff had originally asserted. Specifically, the court determined that the easement extended east 40 feet into defendants' property in front of the service bays, down from the 90 feet to which plaintiff asserted he had a right. Under the court's ruling, this area may be used for the purposes of "servicing, staging and parking of motor vehicles and trailers. . . ." Defendants are prohibited from constructing or installing any improvement, including underground fuel tanks, which would prevent plaintiff's use of that portion of the easement. Further, plaintiffs were adjudged the nonexclusive holders of the portion of the easement for vehicular ingress and egress. Over the nonexclusive portion of the easement defendants are permitted to install underground storage tanks so long as plaintiffs are given alternate access.

Both Terminal Station and Don Brown have appealed.

---

[1]The court received five letters.

## DISCUSSION

### *I.*

### *There Was Substantial Evidence of a Prescriptive Easement\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### *II.*

### *Prescriptive Easements May Not Be Obtained Against a Landlord Reversioner*

██ Defendant Brown contends that the trial court erred as a matter of law in recognizing the easement against him as the fee owner and landlord of the property on which Terminal Station is located. His argument is articulated thus: A future interest, such as a landlord's reversion, cannot be the subject of a prescriptive easement because the statutory period for acquiring the easement runs only against a possessory interest. Actions for ejectment or trespass, which are the usual method for preventing an easement by prescription, require that the owner have a present possessory interest in the property he seeks to protect. Because Brown, as landlord, is not in possession of 2300 East Steel Road (the lease runs until the year 2005), he is legally unable to bring the necessary action to obstruct plaintiff's use by prescription.[4] Defendant cites Civil Code section 741, which confirms that the prescriptive period cannot run against a future interest: "No future interest can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent interest, nor by any destruction of such precedent interest by forfeiture, . . . or otherwise. . . ."

In response, plaintiff contends that Brown was not under a legal disability to bring an action to stop plaintiff from gaining the easement by prescription. It cites section 826 of the Civil Code, which enables landlords to maintain actions to protect their property during the term of a lease: "A person having an estate in fee, in remainder or reversion, *may maintain an action for any injury done to the inheritance*, notwithstanding an intervening estate for . . . years, and although, . . . he has no interest in the property at the commencement of the action." (Italics added.) Plaintiff argues that section 826 empowers landlords to sue to protect their inheritance, which would include preventing plaintiff from acquiring an easement by prescription, and defend-

---

*See footnote, *ante,* page 1601.

[4]This particular contention in the appeal is taken on behalf of defendant Brown only. In other words, defendants argue that even if an easement were recognized, it cannot be found as against defendant Brown.

ant Brown having done nothing during the statutory period, plaintiff's use here ripened into an easement.

An analogous problem was addressed in *Smith* v. *Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769 [184 Cal.Rptr. 308], in which the landlords brought an action in trespass against a third-party concrete company for depositing " 'broken concrete wash-out' " on the landlords' property at the behest of the tenants' sublessee. (*Id.* at p. 773.) In its defense, the concrete company argued that the landlords were not in possession and could not bring an action for trespass. (*Id.* at pp. 773-774.) The court recognized that the landlords were legally unable to bring an action for trespass as trespass "is designed to protect *possessory*—not necessarily ownership—interests in land from unlawful interference. [Citations.]" (*Id.* at pp. 774-775, original italics.) Yet the court reversed the judgment for defendant, holding that the landlords had a claim for "injury done to the inheritance" pursuant to Civil Code section 826 because the disposed concrete constituted waste. (*Id.* at pp. 775-777.)

■ Injury to the inheritance is defined as waste. (*Smith* v. *Cap Concrete, Inc., supra*, 133 Cal.App.3d at pp. 775-776; *Sallee* v. *Daneri* (1942) 49 Cal.App.2d 324, 327 [121 P.2d 781].) Waste occurs when the market value of property is substantially or permanently diminished or depreciated. (*Rowe* v. *Wells Fargo Realty Services, Inc.* (1985) 166 Cal.App.3d 310, 319 [212 Cal.Rptr. 374]; *Smith, supra*, at p.777.) " '[W]aste' can only be proved, with the possible exception of a few instances, by evidence of acts which injuriously affect the market value of the property." (*Sallee, supra*, 49 Cal.App.2d at p. 327.) The test is applied flexibly and includes the " 'quantity or quality of the estate, the nature and species of property, [and] the relation to it of the person charged to have committed the wrong.' " (*Smith, supra*, at p. 777, quoting from *Southern Pacific Land Co.* v. *Kiggins* (1930) 110 Cal.App. 56, 61 [293 P. 708].)

■ While it would stretch the imagination to say that an easement does not cause a depreciation in market value of the servient tenement, to recognize Civil Code section 826 as providing a nonpossessory reversioner with a cause of action would eviscerate the rule to the contrary as stated in Civil Code section 741. This we decline to do. ■ "It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter." (2B Sutherland, Statutory Construction (5th ed. 1992) § 51.02, p. 121, fns. omitted.) "Statutes for the same subject, . . . are construed to be in harmony if reasonably possible." (*Id.* at p. 122, fns. omitted.)

■ Rather, we adopt the distinction as cogently set forth in *Smith*, between a suit to protect an "ownership interest" under Civil Code section

826 on the one hand, and a suit to protect possessory interests, such as an action in trespass on the other hand. "[A]n out-of-possession property owner may recover for an *injury to the land* by a trespasser which damages the ownership interest. [Citations.] In our view, the inquiry in a case involving unlawful intrusion on property rights should focus upon the nature of the injury and the damages sought: If [on the one hand,] the right to possession has been abridged and possessory rights damaged, the possessor may complain by way of an action for trespass; if, on the other hand, an intruder harms real property in a manner which damages the ownership interest, the property owner may seek recovery whether the cause of action be technically labeled trespass or some other form of action, such as waste." (*Smith* v. *Cap Concrete, Inc., supra,* 133 Cal.App.3d 769, 774-775, italics added, fn. omitted.) Having made that distinction, the *Smith* court held that the landlord could not sue on a theory of trespass, but could bring an action for damage to the ownership interest, i.e., for waste. (*Id.* at pp. 775-777.)

In contrast, here, the interest which defendant Brown seeks to protect is wholly and essentially the right to possession. It is that stick in the bundle of rights which gives Brown the power to prevent others from entering his property—*quare clausum fregit.* The injury to be prevented is entry onto defendant's property for the period of the prescription, causing plaintiff's use to ripen into a right. To protect that interest, defendant must bring an action in trespass or ejectment.[5]

This holding is supported by Civil Code section 741 which explicitly recognizes that a future estate cannot be harmed during the pendency of the intervening estate. That is, the prescriptive period cannot commence until the future estate is vested. (Civ. Code, § 741.)

Moreover, all of the cases dealing with section 826 of the Civil Code construe "injury done to the inheritance" as transitory, physical injury to the land itself, such as the laying of railroad tracks (*Thompson* v. *Pacific Electric Ry. Co.* (1928) 203 Cal. 578, 582-583 [265 P. 220]); the diversion of water causing crops to whither (*Heilbron* v. *Water Ditch Co.* (1888) 75 Cal. 117,

---

[5]Citing *Kerr Land & Timber Co.* v. *Emmerson* (1969) 268 Cal.App.2d 628, 634 [74 Cal.Rptr. 307], plaintiff observes that defendants could also seek an injunction to prevent plaintiff's use of the property for the prescriptive period, which action does not require possession. However, in *Kerr,* the plaintiff did have possession, and here defendant landlord does not. The harm being prevented remains possessory in nature, requiring defendant to have possession to bring an action. (*Smith* v. *Cap Concrete, Inc., supra,* 133 Cal.App.3d at pp. 774-776.) Further, as defendants note, there has not yet been a case which recognizes a nonpossessory owner's right to bring an action against a third party who was not in some sort of privity with the owner. (See, e.g., *id.* at p. 776, fn. 7.)

118 [17 P. 65]); and the dumping of concrete washout. (*Smith* v. *Cap Concrete, Inc., supra,* 133 Cal.App.3d 769, 773.) Such is not the type of harm asserted here. Indeed, in *Thompson,* the court contemplated, just as we do here, that an injury under Civil Code section 826 would be physical harm to the land, stating that section 826 had no applicability for the landlord because "There is no conclusive presumption that if the [railroad] tracks are removed or abandoned on the falling in of the life estate, an injury has resulted to the inheritance." (*Thompson, supra,* at pp. 582-583.)

Thus, Brown, lacking a present possessory interest in the property, was legally unable to bring an action to prevent plaintiff from gaining the easement by prescription. As a consequence, under Civil Code section 741, no prescriptive easement could ripen against him. The judgment against defendant Brown must therefore be reversed.

### DISPOSITION

The judgment appealed from is affirmed as against defendant Terminal Station, but reversed as to defendant Brown. Each party shall bear its own costs on appeal. Otherwise, it is a pleasure to compliment counsel on both sides for the excellent briefing they provided the court. Such quality is rare these days.

Dabney, Acting P. J., and Timlin, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 21, 1992.